PANISH SHEA & BOYLE LLP
KEVIN BOYLE, State Bar No. 192718
        boyle@psblaw.com
RAHUL RAVIPUDI, State Bar No. 204519
        ravipudi@psblaw.com
11111 Santa Monica Blvd., Ste. 700
Los Angeles, CA 90025
Tel:      (310) 477-1700
Fax:      (310) 477-1699

THE X-LAW GOUP, PC
FILIPPO MARCHINO, State Bar No. 256011
        filippo.marchino@xlawx.com
DAMON ROGERS, State Bar No. 263853
        damon.rogers@xlawx.com
633 W. 5th St., 26th Floor., Suite 2629
Los Angeles, CA 90071
Tel:      (213) 223-2232
Fax:      (213) 226-4691

Attorneys for Plaintiff

EAGAN AVENATTI, LLP
MICHAEL J. AVENATTI, Bar No. 206929
JASON M. FRANK, Bar No. 190957
450 Newport Center Drive, Second Floor
Newport Beach, CA 92660
Tel:      (949) 706-7000
Fax:      (949) 706-7050

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANDRE BATUNGBACAL, an individual and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>POWER BALANCE LLC, a Delaware Limited Liability Company, TROY JOHN RODARMEL, an individual, JOSH RODARMEL, an individual, KEITH KATO, an individual, and, DOES 1-10, inclusive,<br><br>    Defendants. | **NATIONWIDE CLASS ACTION**<br><br>Case No. SA CV11-00018 CJC (MLGx)<br><br>**NATIONWIDE CLASS ACTION SETTLEMENT AGREEMENT** |

1

## NATIONWIDE CLASS ACTION SETTLEMENT AGREEMENT

2     This **Settlement Agreement**[1] is by and between representative plaintiff Andre

3    Batungbacal (the "**Representative Plaintiff**") on behalf of himself and a class of similarly

4    situated persons, and Defendants Power Balance LLC, Troy John Rodarmel, Josh Rodarmel and

5    Keith Kato (collectively referred to herein as "**Power Balance**"). The **Representative Plaintiff**

6    and **Power Balance** are desirous of settling their differences and have agreed to the terms of

7    settlement set forth in this **Settlement Agreement**.

8     The **Representative Plaintiff** believes that the claims asserted in this action have merit

9    and that the evidence developed to date in this action supports the claims. Counsel for the

10   **Representative Plaintiff**, however, recognize the expense and length of continued proceedings

11   necessary to prosecute this action against **Power Balance** through trial and through appeals.

12   Counsel for the **Representative Plaintiff** also have taken into account the uncertain outcome and

13   the risk of any litigation, as well as the difficulties and delays inherent in such litigation.

14   Counsel for the **Representative Plaintiff** also are mindful of the inherent problems of proof

15   under, and possible defenses to, the causes of action asserted in the Complaint, including the

16   defenses that will be asserted by **Power Balance**. **Power Balance** has denied, and continues to

17   deny, liability for the claims asserted by the **Representative Plaintiff**.

18    The parties engaged in arms length negotiations, including mediation on February 4,

19   2011 before noted mediator the Honorable John K. Trotter (Ret.), during which the parties

20   candidly aired the strengths and weaknesses in their litigation positions. On March 23, 2011, the

21   parties entered into the agreement set forth in this **Settlement Agreement**.

22    In light of the foregoing, counsel for the **Representative Plaintiff** believe that the

23   settlement set forth in this **Settlement Agreement** confers substantial benefits upon the

24   **Settlement Class** and each of the **Class Members**. Based on their evaluation, counsel for the

25   **Representative Plaintiff** have determined that the settlement set forth in this **Settlement**

26

27

[1]     Defined terms in this **Settlement Agreement** are printed in bold font with Initial Capitals
28   and defined in Section 1 herein.

LLP

1    **Agreement** is in the best interests of the **Representative Plaintiff** and the **Settlement Class** and

2    each of the **Class Members**.

3         NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the

4    **Representative Plaintiff** (for themselves and the **Class Members**) and **Power Balance** that,

5    subject to the approval of the **Court**, this action and the **Released Claims** shall be finally and

6    fully compromised, settled and released, and this action shall be dismissed on the merits and with

7    prejudice as to all **Settling Parties**, upon and subject to the terms and conditions of this

8    **Settlement Agreement**, as follows:

9    1.    **DEFINITIONS**

10        As used in this **Settlement Agreement** the following terms have the meanings specified

11   below:

12        1.1.    **"Claim"** means a claim for refund submitted by a **Class Member. Class**

13                **Members** will be required to submit a **Claim Form** and requested to return his or

14                her **Power Balance Product(s)** with a **Proof of Purchase** to the **Claims**

15                **Administrator** during the **Claims Period** in order to obtain the monetary benefits

16                of this **Settlement Agreement**. The monetary benefits of this **Settlement**

17                **Agreement** will be a one hundred percent (100%) refund of the retail price for the

18                returned **Power Balance Product(s)**, plus an additional $5.00 to cover shipping

19                and handling expenses. A list of the **Power Balance Products** and retail prices

20                are attached hereto as Exhibit "A."

21        1.2.    **"Claim Form"** means the claim form to be used by **Class Members** to submit a

22                **Claim**. A copy of the parties' proposed **Claim Form**, subject to agreed revisions

23                and **Court** approval, is attached hereto as Exhibit "B."

24        1.3.    **"Claims Period"** means the four (4) month period to submit **Claims**, which will

25                commence on May 1, 2011 or on a date to be determined by the **Court**. The

26                **Claims Period** will end four (4) months after the date the **Claims Period** begins.

27        1.4.    **"Claims Administrator"** shall mean Kurtzman Carson Consultants LLC, 2335

28                Alaska Avenue, El Segundo, CA 90245, or any other independent third party

1 administrator mutually agreed to by the **Settling Parties** and approved by the

2 **Court** to administer the notice and claims process.

3 1.5. "**Class Counsel**" means Kevin Boyle, Esq. and Rahul Ravipudi, Esq. of Panish,

4  Shea & Boyle LLP, 11111 Santa Monica Blvd., Ste. 700, Los Angeles, CA 90025

5  and Filippo Marchino, Esq. and Damon Rogers, Esq. of the X-Law Group, P.C.,

6  633 W. 5th St., 26th Floor., Suite 2629, Los Angeles, CA 90071.

7 1.6. "**Class Member**" means any **Person** who falls within the definition of the

8  **Settlement Class**.

9 1.7. "**Class Period**" shall mean January 1, 2006 to the day immediately preceding the

10  beginning of the **Claims Period.**

11 1.8. "**Counsel for Defendant or Power Balance**" means the law firm of Eagan

12  Avenatti, LLP, 450 Newport Center Drive, Second Floor, Newport Beach, CA

13  92660.

14 1.9. "**Court**" means the United States District Court for the Central District of

15  California, Western Division.

16 1.10. "**Effective Date**" means the date upon which the **Judgment** is **Final**.

17 1.11. "**Email Notice**" means the **Summary Notice** of this **Settlement** that will be

18  emailed by the **Claims Administrator** to **Class Members** whose email addresses

19  can be located from **Power Balance's** records or from the records of third party

20  **GSI Commerce.** The **Email Notice** will provide a direct link to the **Settlement**

21  **Website.** A copy of the proposed **Summary Notice**, subject to **Court** approved

22  revisions, is attached hereto as Exhibit "C."

23 1.12. "**Facebook Notice**" means the prominently displayed reference to the **Settlement**

24  that will appear on **Power Balance's** home Facebook page, at

25  www.facebook.com\powerbalance. This **Facebook Notice** will also be used by

26  Power Balance to send a direct message to each of its Facebook friends. The

27  **Facebook Notice** will provide a direct link to the **Settlement Website**. A copy of

28

CLASS ACTION SETTLEMENT AGREEMENT

| | |
|---|---|
| 1 | the proposed **Facebook Notice**, subject to **Court** approved revisions, is attached |
| 2 | hereto as Exhibit "E." |
| 3 | 1.13.  "**Final**" means all of the following have occurred: (i) the **Court** has entered an |
| 4 | order finally approving the settlement pursuant to the Federal Rules of Civil |
| 5 | Procedure, (ii) **Judgment** has been entered; and (iii) if, and only if, the **Court** has |
| 6 | overruled all or part of an objection filed by a **Class Member** or has denied any |
| 7 | relief sought in the motion(s) for final approval, the time for appeal has either run |
| 8 | without an appeal being filed, the aggrieved party or parties have waived their |
| 9 | right to appeal, or any appeal (including any requests for rehearing, petitions for |
| 10 | certiorari or appellate review) has been finally resolved. Any proceedings, order, |
| 11 | or appeal, or petition for a writ of certiorari that pertains solely to application for |
| 12 | attorneys' fees, costs or expenses or enhancement awards to the **Representative** |
| 13 | **Plaintiff**, shall not in any way delay or preclude the **Judgment** from becoming |
| 14 | final. |
| 15 | 1.14.  "**Final Approval Hearing**" means the hearing required by Federal Rule of Civil |
| 16 | Procedure 23(e)(2) in which the **Court** will determine whether the **Settlement** is |
| 17 | "fair, reasonable and adequate." |
| 18 | 1.15.  "**GSI Commerce**" means third party GSI Commerce, Inc. |
| 19 | 1.16.  "**Injunction**" means the permanent injunction agreed to by the parties (attached |
| 20 | as Exhibit "F" hereto) and entered by the **Court** as part of the **Judgment**. |
| 21 | 1.17.  "**Judgment**" means the judgment to be rendered by the **Court** pursuant to Federal |
| 22 | Rule of Civil Procedure 23(c)(3). |
| 23 | 1.18.  "**Justice Trotter**" means the Honorable John K. Trotter (Ret.) who served as the |
| 24 | mediator in this matter and who will perform the duties set forth in this |
| 25 | **Settlement Agreement**. |
| 26 | 1.19.  "**Long Form Notice**" means the complete form of **Notice** available to **Class** |
| 27 | **Members** on the **Settlement Website, Power Balance's** website and on request. |
| 28 | |

CLASS ACTION SETTLEMENT AGREEMENT

1        A copy of the proposed **Long Form Notice**, subject to **Court** approved revisions,

2        is attached hereto as Exhibit "D."

3   1.20.   "**Mail Notice**" means the **Summary Notice** of this **Settlement** that will be mailed

4        in a post card to **Class Members** whose addresses can be located from **Power**

5        **Balance's** records and third party **GSI Commerce's** records.  A copy of the

6        proposed **Summary Notice**, subject to **Court** approved revisions, is attached

7        hereto as Exhibit "C."

8   1.21.   "**Muscle Test**" means those physical tests that **Power Balance** has used in the

9        past to demonstrate the potential benefits of its **Power Balance Products**.  These

10       tests include the following: (i) a prospective customer extending his or her arms

11       out and having a third party push on the customer's arms – both with and without

12       the customer wearing a **Power Balance Product** – to determine if the **Power**

13       **Balance Product** helps improve the customer's balance; (ii) a prospective

14       customer standing with feet at shoulder width and having a third party pull

15       vertically on the customer's arm – both with and without the customer wearing a

16       **Power Balance Product** – to determine if the **Power Balance Product** helps

17       improve the customer's strength; or (iii) a prospective customer being asked to

18       rotate sideways while standing with feet at shoulder width – first without and then

19       with the customer wearing a **Power Balance Product** – to determine if the **Power**

20       **Balance Product** helps improve the customer's flexibility.

21   1.22.   "**Net Settlement Fund**" means the **Settlement Fund** minus the **Claims** paid to

22       **Qualifying Class Members**.

23   1.23.   "**Notice**" means the **Email Notice, Mail Notice, Summary Notice, Long Form**

24       **Notice, Published Notice** and **Facebook Notice** approved by the **Court**, which

25       collectively comprise the notice to **Class Members** pursuant to Federal Rule of

26       Civil Procedure 23(c)(2).

27   1.24.   "**Power Balance**" means Power Balance LLC, and all of its **Related Parties**.

28

CLASS ACTION SETTLEMENT AGREEMENT

1.25. **"Power Balance Product," "Power Balance Products" or "Power Balance Product(s)"** means any and all products and accessories offered for sale by **Power Balance** directly or through a third party retailer, including, but not limited to Bracelets, Wristbands, Pendants, Necklaces, Jewelry and Holograms.

1.26. **"Person"** means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and the spouses, heirs, predecessors, successors, representatives or assignees of any of them.

1.27. **"Published Notice"** means the **Summary Notice** of this **Settlement** that will be published by the **Claims Administrator**, on a nationwide basis, once in the following publications: *Parade Magazine*, *Sports Illustrated* and *People*. The **Published Notice** will be published in the first issue of each of these magazines that is available after the Preliminary Approval Order is signed. The **Published Notice** will also be published on **Power Balance's website** throughout the **Claims Period**. A copy of the **Summary Notice**, subject to **Court** approved revisions, is attached hereto as Exhibit "C."

1.28. **"Preliminary Approval Order"** means the order conditionally certifying the **Settlement Class**, preliminarily approving this **Settlement Agreement** pursuant Federal Rule of Civil Procedure 23(e), directing **Notice** to be provided to the **Settlement Class** in the manner set forth in this **Settlement Agreement**, and setting the date for the final approval hearing.

1.29. **"Proof of Purchase"** means any receipt, credit card statement or other document proving that a **Class Member** purchased a **Power Balance Product**

1.30. **"Qualifying Class Members"** means any and all **Class Members** who submit a **Claim** for a refund approved by the **Claims Administrator** based on the criteria set forth in Section 2.1 below.

1.31.   **"Related Parties"** means each of a **Person's** past or present directors, officers, employees, partners, principals, agents, retailers, independent contractors, underwriters, issuers, insurers, coinsurers, reinsurers, controlling shareholders, any entity in which the **Person** has a controlling interest, advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, associates, related or affiliated entities, any members of his/her/its immediate families, or any trust of which any **Person** is the settlor, or which is for the benefit of any **Person** and/or member(s) of his or her family, any **Person** who is authorized by **Power Balance** to sell **Power Balance Products** and any and all of **Power Balance's** endorsers, athletes, retailers, licensees/licensors and partners.

1.32.   **"Released Claims"** means and includes all allegations, causes of action, liabilities, damages, demands, rights or equitable, legal or administrative relief, of any basis or source against **Released Persons**, whether known or **Unknown**, that were, have been or could have been, now, in the past, or in the future, asserted or alleged in, or that relate to the action entitled <u>Batungbacal. v. Power Balance LLC</u> <u>et al.</u>, SA CV11-00018 CJC (MLGx) including, but not limited to any and all claims relating to: (i) whether the advertising of any **Power Balance Products** violate any applicable laws, rules or regulations, including, but not limited to, state or federal laws, rules or regulations; (ii) whether **Power Balance** made false or misleading statements when advertising its products; (iii) whether **Power Balance** misrepresented the benefits or characteristics of its products; (iv) whether **Power Balance** engaged in fraudulent, unfair or unlawful business practices in violation of California Business & Professions Code Section 17200 *et seq.* and 17500 *et seq.;* and (v) whether **Power Balance** violated any provisions of the California Consumer Legal Remedies Action, California Civil Code Section 1770 *et seq.*  This expressly includes, but is not limited to, any and all claims that have been asserted or could have been asserted in the following

CLASS ACTION SETTLEMENT AGREEMENT

1     actions: *Clemence v. Power Balance et al.*, pending in the United States District

2     Court - Central California, Case No. 11-cv-00025-CJC; *Intihar v. Power Balance*

3     *et. al.*, pending in the United States District Court - Southern Florida, Case No.

4     11-cv-60049-WPD; *Khang v. Power Balance et al.*, pending in the United States

5     District Court - Central California, Case No. 11-cv-00145-CJC; *Casserly v.*

6     *Power Balance et al.*, pending in the United States District Court - Central

7     California, Case No. 11-cv-00670; *Ghodsian v. Power Balance et al.*, pending in

8     the United States District Court - Central California, Case No. 11-cv-00075-CJC;

9     *Greene v. Power Balance et al.*, pending in the United States District Court -

10     Central California, Case No. 11-cv-00049-CJC; *Packer v. Power Balance et al.*,

11     pending in United States District Court - New Jersey, Case No. 11-cv-00802;

12     *Delizo v. Power Balance et al.*, pending in the United States District Court -

13     Central California; Case No. 11-cv-00151-CJC; *C.F.C. v. Power Balance et al.*,

14     pending in the United States District Court - Northern California, Case No. 11-cv-

15     00487; *Granados v. Power Balance et al.*, pending in the United States District

16     Court - Central California, Case No. 11-cv-00191; *Pearson v. Power Balance et*

17     *al.*, pending in California Superior Court for the County of Los Angeles, Case No.

18     BC452683; *Bowlin v. Power Balance et al*, pending in the United States District

19     Court - Northern Alabama, Case No. 11-cv-00351; *Davidson v. Power Balance et*

20     *al.*, pending in the United States District Court - Northern Alabama, Case No. 11-

21     cv-00288-RDP; *Diaz v. Power Balance et al.*, pending in the United States

22     District Court - Central California, Case No. 11-cv-00205-CJC; *Whiting v. Power*

23     *Balance et al.*, pending in the United States District Court - Central California,

24     Case No. 11-cv-00213-CJC; *Keller v. Power Balance et al.*, pending in the United

25     States District Court - Northern Alabama, Case No. 11-cv-00243-IPJ; *Greenwood*

26     *v. Power Balance et al.*, pending in United States District Court – Southern

27     Florida, Case No. 11-cv-80204; *Martinez v. Power Balance et al.*, pending in

28     United States District Court – Middle Florida, Case No. 11-cv-00365; *Byrd v.*

LLP

CLASS ACTION SETTLEMENT AGREEMENT

1    *Power Balance et al.,* pending in United States District Court – Northern

2    Alabama, Case No. 11-cv-00925; *Patrick v. Power Balance et al.,* pending in

3    United States District Court – Northern California, Case No. 11-cv-01202-LB;

4    *Lee v. Power Balance et al.,* pending in United States District Court – Central

5    California, Case No. 11-cv-00432-DOC.

6    1.33.   **"Released Persons"** means **Power Balance** and its **Related Parties,** including,

7    but not limited to, any **Person** who is authorized by **Power Balance** to sell **Power**

8    **Balance Products** and any and all of **Power Balance's** endorsers, athletes,

9    retailers, licensees/licensors and partners.  By way of example only, athletes and

10   endorsers include, but are not limited to, Shaquille O'Neal and Lamar Odom.

11   1.34.   **"Request Exclusion"** or **"Request for Exclusion"** shall mean a request by a

12   **Class Member** to be excluded or opt-out from the Class, which complies with the

13   requirements set forth in Section 7.1.7. of this Settlement Agreement.

14   1.35.   **"Representative Plaintiff"** means Andre Batungbacal.

15   1.36.   **"Settlement"** or **"Settlement Agreement"** means the terms set forth in this

16   document, the Nationwide Class Action Settlement Agreement between the

17   **Settling Parties**.

18   1.37.   **"Settlement Class"** means the class, certified for settlement purposes only, of all

19   **Persons** in the United States who purchased **Power Balance** products during the

20   **Class Period**.  The **Settlement Class** does not include **Persons** who purchased

21   the **Power Balance Products** for the purpose of resale, including but not limited

22   to, wholesalers, distributors and retail stores.

23   1.38.   **"Settlement Fund"** means the fund established by **Power Balance** for the benefit

24   of the **Settlement Class** as set forth in Section 2.2.

25   1.39.   **"Settling Parties"** means, collectively, **Power Balance** and the **Representative**

26   **Plaintiff** on behalf of himself and the **Class Members**.

27   1.40.   **"Settlement Website"** shall mean the website created and maintained by the

28   **Claims Administrator** that shall contain a copy of the **Published Notice**, the

1    Long Form Notice, the Settlement Agreement, the Preliminary Approval

2    Order, the Claim Form and information how to Request Exclusion from the

3    Class or file Objections to the Settlement.  The address of the Settlement Website

4    shall be www.pbsettlement.com.

5    1.41.    "Summary Notice" means the summary notice of this Settlement which will be

6        emailed and mailed in the manner set forth in this Settlement Agreement.  A

7        copy of the proposed Summary Notice, subject to Court approved revisions, is

8        attached hereto as Exhibit "C."

9    1.42.    "Unknown" or "Unknown Claims" mean any Released Claim which any Class

10        Member does not know or suspect to exist in his or her favor at the time of the

11        release of Power Balance which, if known by him/her, might have affected

12        his/her decision to settle with and release Power Balance or might have affected

13        his/her decision not to object to this Settlement Agreement or not to request

14        exclusion from this Settlement Agreement.

15

16   2.    SETTLEMENT BENEFITS TO NATIONWIDE CLASS

17   2.1.    <u>Full Refund of Purchase Price To Any Unsatisfied Class Members</u>:  Any

18        Class Member will be allowed to return Power Balance Product(s) to the

19        Claims Administrator in exchange for a one hundred percent (100%) refund of

20        the retail price for the returned product(s), plus an additional $5.00 to cover

21        shipping and handling expenses related to submitting a Claim.  In order to obtain

22        these monetary benefits, Class Members will be required to submit the

23        information requested in the Claim Form and return their Power Balance

24        Product(s) with a Proof of Purchase to the Claims Administrator during the

25        Claims Period.  Class Members will only be entitled to receive one payment of

26        $5.00 to cover shipping and handling expenses, regardless of the number of

27        products returned.  Claims for refunds will be limited to a cap of ten (10) returned

28        Power Balance Product(s) per Class Member, unless Power Balance approves

refunds in excess of the cap.   **Class Members** will only be entitled to receive a refund for the **Power Balance Product(s)** that are returned to the **Claims Administrator** and which are accompanied by a corresponding **Proof of Purchase**, subject to the exceptions set forth below.

2.1.1.   If a **Class Member** returns his or her **Claim Form** and **Power Balance Product(s)** *without* a **Proof of Purchase**, the **Class Member** may still receive a full refund for the returned product(s), plus an additional $5.00, so long as: (i) **Power Balance** and the **Claims Administrator** determine the returned product(s) are not counterfeit; and (ii) **Power Balance** and the **Claims Administrator** are satisfied the **Class Member** was the actual purchaser of the product(s).   If such a **Claim** is rejected on either ground, the **Class Member** may challenge the initial rejection of his or her Claim and obtain the monetary benefits set forth in Section 2.1 by proving to **Justice Trotter** by a preponderance of the evidence in accordance with the Federal Rules of Evidence that the returned product(s) are not counterfeit and the **Class Member** was the actual purchaser of the product(s).

2.1.2.   If a **Class Member** returns his or her **Claim Form** with a **Proof of Purchase**, but does not return the **Power Balance Product(s)** because the **Class Member** attests on the **Claim Form** that he or she no longer possesses the product(s), then the **Class Member** may still receive a full refund, plus an additional $5.00, so long as **Power Balance** does not object to the **Claims Administrator** providing a refund.   If such a **Claim** is rejected on either ground, the **Class Member** may challenge the initial rejection of his or her Claim and obtain the monetary benefits set forth in Section 2.1 by proving to **Justice Trotter** by sworn declaration and a preponderance of the evidence in accordance with the Federal Rules of Evidence that the **Class Member** no longer possesses the **Power Balance**

CLASS ACTION SETTLEMENT AGREEMENT

1  **Product(s)** and the **Class Member** was the actual purchaser of the

2  product(s).  Claims for refunds under this provision will be limited to a

3  cap of five (5) returned **Power Balance Product(s)** per **Class Member**.

4  2.1.3.  **Power Balance** will have the right to object to the payment of any **Claim**

5  if it determines that the returned product(s) accompanying the **Claim** are

6  counterfeit.  If the **Class Member** challenges the rejection of the **Claim**

7  and initially provided a **Proof of Purchase** with the **Claim**, then **Power**

8  **Balance** will have the burden of proving to **Justice Trotter** through a

9  preponderance of the evidence in accordance with the Federal Rules of

10  Evidence that the product(s) are counterfeit.  The **Claims Administrator**

11  shall not pay the **Claim** unless approved by the **Justice Trotter**.

12  2.1.4.  The **Settling Parties** agree that **Justice Trotter's** determination regarding

13  any disputed **Claims** shall be final.

14  2.2.  **Creation of Settlement Fund:** **Power Balance** will create a **Settlement Fund**

15  initially totaling five hundred thousand dollars ($500,000.00) from which to pay

16  **Qualifying Class Members' Claims.  Power Balance** will pay this initial

17  amount into the **Settlement Fund** by the first day of the **Claims Period.**  After all

18  **Qualifying Class Members' Claims** have been paid from the **Settlement Fund**,

19  the remaining amounts in the **Settlement Fund**, if any, shall be paid to the

20  following non-profit organization dedicated to fighting against childhood obesity,

21  NBA Fit.

22

23

24

25

26

27

28

2.2.1. **Claims** will be paid on a "rolling" basis once they are received and approved by the **Claims Administrator.**  If at any time the **Settlement Fund** has less than two hundred and fifty thousand dollars ($250,000) as a result of the interim payment of **Claims, Power Balance** will replenish the **Settlement Fund** up to two hundred and fifty thousand dollars ($250,000).  In other words, at no time will the **Settlement Fund** have less than two hundred and fifty thousand dollars ($250,000) until all **Claims** have been paid.

2.2.2. If the total **Claims** exceed the amounts remaining in the **Settlement Fund,** Power Balance will directly pay those Claims through the **Claims Administrator.**

2.3.　**Injunction / Change In Advertising:**  In order to address any contentions that **Power Balance's** advertising is false or misleading and subject to **Court** approval, **Power Balance** will agree to the permanent **Injunction** attached hereto as Exhibit "F" and change its advertising accordingly.  **Power Balance** will not represent in any advertising to potential customers (including, but not limited to, any written or oral representations) that **Power Balance Products** will "improve balance, strength or flexibility" or that **Power Balance Products** "work with your body energy," unless and until **Power Balance** is able to provide the **Court** with evidence that supports such representations.  **Power Balance** also will not use a **Muscle Test** to demonstrate the potential benefits of its **Power Balance Products**, unless and until **Power Balance** is able to provide the **Court** with evidence demonstrating the efficacy of the **Muscle Test.**  The **Injunction** will be entered by the **Court** as part of the **Judgment.**  The **Court** will retain jurisdiction on all matters relating to the **Injunction.**  Power Balance will have the right to seek modification of the **Injunction** in the event that it is able to provide evidence to support any representations or physical demonstrations prohibited by the **Injunction.**

**2.3.1. Power Balance** will use its best efforts to remove postings demonstrating the **Muscle Test** that appear on its website or You Tube. **Power Balance** will not post any demonstrations of the **Muscle Test** on the internet after the **Effective Date** of the **Settlement Agreement**. Notwithstanding the foregoing, it will not be a violation of the **Injunction** if a posting demonstrating the **Muscle Test** appears on the internet and was posted prior to the **Effective Date** and/or is posted by a third party.

**3.    CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS:**

3.1.    The parties agree that the **Representative Plaintiff** may apply to the **Court** for an enhancement payment in the amount of no more than five hundred dollars ($500.00) to compensate him for his time and expenses incurred as a result of his participation in this action. **Power Balance** shall not oppose or object to such an award. This **Settlement Agreement** is <u>not</u> conditioned on the **Court's** approval of a class representative enhancement payment. Any class representative enhancement payment approved by the **Court** shall be paid directly by **Power Balance** outside of the **Settlement Fund**, and shall not reduce the **Settlement Fund.**

3.2.    **Power Balance** shall wire any awarded enhancement payments to **Class Counsel** on behalf of the **Representative Plaintiff** within five (5) business days after the **Effective Date**.

**4.    ATTORNEYS' FEES AND COSTS**

4.1.    Subject to **Court** approval pursuant to Federal Rule of Civil Procedure 23(h), **Class Counsel** may seek attorneys' fees and costs to be directly paid by **Power Balance** outside of the **Settlement Fund**. **Power Balance** agrees that it will not oppose or object to **Class Counsel's** application for attorneys' fees and costs, so long as **Class Counsel** requests *less* than one million dollars ($1,000,000.00) in attorneys fees and costs. This **Settlement Agreement** is <u>not</u> contingent on the

1    Court's approval of **Class Counsel's** petition for fees and costs.  Any award of

2    attorneys' fees and costs will be paid directly by **Power Balance** outside of the

3    **Settlement Fund** and will not reduce the **Settlement Fund**.

4    4.2.   **Power Balance** shall wire any awarded attorneys fees and costs to **Class Counsel**

5    within five (5) business days after the **Effective Date**.

6  **5.**    **RELEASES**

7    5.1.   <u>Release</u>:  Upon **Final** approval, and by not electing to be excluded from the

8    **Class**, the **Representative Plaintiff** and each **Class Member** agree to and by

9    operation of law shall be deemed to forever release, remise, acquit, satisfy, and

10    discharge **Power Balance** and its related parties from the **Released Claims**.  This

11    **Release** explicitly includes any **Unknown Claims**.  Upon the **Effective Date**,

12    each of the **Class Members** shall be deemed to have, and by operation of the

13    **Judgment** shall have, fully, finally, and forever released, relinquished and

14    discharged all **Released Claims** against the **Released Persons**, whether or not

15    such **Class Member** executes and delivers a timely **Claim Form**, and such claims

16    will be dismissed with prejudice.

17    5.2.   <u>Waiver of Unknown Claims</u>:  It is the desire of the **Parties** to fully, finally, and

18    forever settle, compromise, and discharge all of the **Representative Plaintiff's**

19    and the **Class Members' Released Claims** which were or which could have been

20    asserted in this action against the **Released Persons**, whether known or

21    **Unknown.** As a consequence, the **Representative Plaintiff** and each **Class**

22    **Member** may hereafter discover facts in addition to or different from those which

23    he or she now knows or believes to be true with respect to the subject matter of

24    the **Released Claims**, but the **Representative Plaintiff** and each **Class Member**,

25    upon the **Effective Date**, shall be deemed to have, and by operation of the

26    **Judgment** shall have, fully, finally, and forever settled and released any and all

27    **Released Claims**, known or unknown, suspected or unsuspected, contingent or

28    non-contingent, whether or not concealed or hidden, which then exist, or

1   heretofore have existed upon any theory of law or equity now existing or coming

2   into existence in the future, including, but not limited to, conduct which is

3   negligent, intentional, with or without malice, or a breach of any duty, law or rule,

4   without regard to the subsequent discovery or existence of such different or

5   additional facts.  The **Representative Plaintiff** acknowledges, and each **Class**

6   **Member** shall be deemed by operation of the **Final Judgment** to have

7   acknowledged, that the foregoing waiver was separately bargained for and a key

8   element of the **Settlement** of which this **Release** is a part.

9   5.3.  **Waiver of California Civil Code Section 1542 and Similar Laws, Rules or**

10  **Regulations**:  The **Representative Plaintiff** and **Class Members** hereby

11  expressly and knowingly waive and relinquish any and all rights they have or

12  might have under California Civil Code Section 1542 and under any other

13  statute(s) or common law principle(s) of similar effect.  Accordingly, the

14  **Representative Plaintiff** and **Class Members** hereby each warrant and represent

15  as follows:

16  5.3.1.1.  They are familiar with the provisions of California Civil Code

17  Section 1542, which reads as follows:

18
19  A GENERAL RELEASE DOES NOT EXTEND TO

20  CLAIMS WHICH THE CREDITOR DOES NOW

    KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT

21  THE TIME OF EXECUTING THE RELEASE, WHICH

22  IF KNOWN BY HIM MUST HAVE MATERIALLY

23  AFFECTED HIS SETTLEMENT WITH THE

24  DEBTOR;

25  5.3.1.2.  They have been fully advised by counsel of their own choosing

26  regarding the rights and/or benefits afforded by California Civil

27  Code Section 1542, or that they have had the opportunity to be so

28  advised by counsel and have chosen not to do so;

5.3.1.3.   They fully and completely understand the rights and/or benefits afforded by California Civil Code Section 1542; and

5.3.1.4.   The foregoing waiver and relinquishment of any and all rights under Civil Code Section 1542 and any other statute or common law principal of similar effect was knowingly and voluntarily made.

6.   **ADMINISTRATION OF CLAIMS**

6.1.   **Payment of Administration Costs: Power Balance** will directly pay for all costs incurred to provide **Notice** of this **Settlement** and to administer this **Settlement**. Such payments will be made outside of the **Settlement Fund**, and will not reduce the **Settlement Fund**.

6.2.   **Appointment of Claims Administrator**: The **Settling Parties** agree that the **Court** should appoint Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 as the **Claims Administrator**.

6.3.   **Claims Administrator's Duties**: The **Claims Administrator** will be required to: (i) obtain the **Class Member** email addresses and mailing addresses from **Power Balance** that **Power Balance** is able to locate from its records or from the records of third party **GSI Commerce**; (ii) send the **Email Notice** and **Mailed Notice** to **Class Members** whose addresses can be located from **Power Balance's** records or from the records of third party **GSI Commerce**; (iii) ensure the **Published Notice** is published, on a nationwide basis in the first issue of each of the following publications that is available after the **Preliminary Approval Order** is signed: *Parade Magazine*, *Sports Illustrated* and *People*; (iv) ensure the **Published Notice** and **Long Form Notice** are published on **Power Balance's** website, located at www.powerbalance.com; (v) ensure the **Facebook Notice** is published on the Power Balance home page of Facebook, located at www.facebook.com\powerbalance with a link to the **Settlement Website**; (vi) create and maintain the **Settlement Website** until the end of the **Claims Period**;

CLASS ACTION SETTLEMENT AGREEMENT

1   (vii) maintain a telephone number for **Class Members** to contact the **Claims**

2   **Administrator**; (viii) provide **Claim Forms** requested by **Class Members** either

3   through the **Settlement Website**, by U.S. mail, or by telephone; (ix) provide the

4   notice certification to the **Court** required under Section 6.7; (x) provide the bi-

5   weekly reports of **Claims** to **Class Counsel** and **Power Balance's Counsel** as

6   required by Section 6.11 and provide **Power Balance** with the opportunity to

7   approve any **Claims** in excess of the per-**Class Member** caps set forth in Sections

8   2.1 and 2.1.2; (xi) pay the monetary benefits set forth in Section 2.1 from the

9   **Settlement Fund** to **Class Members** who submit completed **Claims Forms** and

10  return their **Power Balance Product(s)** with a **Proof of Purchase**; (xii) allow

11  **Power Balance** to inspect any returned product(s) to determine if they are

12  counterfeit in accordance with Section 2.1.4; (xiii) allow **Power Balance** to object

13  to the payment of any **Claims** that are not in conformance with Section 2.1 in

14  accordance with Sections 2.1.1, 2.1.2 and 2.1.3; (xiv) notify any **Class Members**

15  whose **Claims** are rejected about the reason(s) for the objection and the **Class**

16  **Member's** right to appeal that decision to the **Court**; (xv) keep track of all

17  **Requests for Exclusion** and provide such records to the **Settling Parties** and the

18  **Court**; (xvi) oversee the **Settlement Fund** and ensure that **Power Balance**

19  replenishes the **Settlement Fund** up to two hundred and fifty thousand dollars

20  ($250,000) in the event the **Settlement Fund** falls below that amount as the result

21  of interim payment of **Claims** as provided in Section 2.2.1; (xvii) ensure that

22  **Power Balance** pays all **Qualifying Class Members** in the event the total dollar

23  amount of the **Claims** exceeds the amount in the **Settlement Fund** as provided in

24  Section 2.2.2; (xviii) ensure that after all **Qualifying Class Member Claims** are

25  paid from the **Settlement Fund**, the **Net Settlement Fund**, if any, is paid to the

26  non-profit organization identified in Section 2.2; (xix) provide any reports

27  requested by the **Court**; and (xx) provide any other services necessary to

28  effectuate the terms of this **Settlement**.

CLASS ACTION SETTLEMENT AGREEMENT

6.4.   **Direct Email Notice**:

    6.4.1   **Power Balance** will be required to provide the **Claims Administrator** with email addresses and mail addresses for U.S. customers who purchased **Power Balance Products** directly from **Power Balance's** website, located a www.powerbalance.com, which are available in **Power Balance's** records.  **Power Balance** will also be required to provide the **Claims Administrator** with mailing addresses and email addresses for U.S. customers who purchased **Power Balance Products** directly from third party **GSI Commerce** and which are still available in **GSI Commerce's** records.

    6.4.2   At least three (3) weeks prior to the beginning of the **Claims Period, Power Balance** will provide the **Claims Administrator** with all email addresses and mail addresses located pursuant to Section 6.4.1.

    6.4.3   On the first day of the **Claims Period**, the **Claims Administrator** will send the **Summary Notice** to the email addresses and mail addresses located pursuant to Section 6.4.1.

6.5.   **Published Notice**:

    6.5.1.   The **Published Notice** will be published by the **Claims Administrator**, on a nationwide basis, once in the following publications: *Parade Magazine, Sports Illustrated and People*.  The **Published Notice** will be published on a nationwide basis in the first issue for of each of these publications that is available after the **Preliminary Approval Order** is signed;

    6.5.2.   The **Facebook Notice** will be published on a nationwide basis on **Power Balance's** home Facebook page, at www.facebook.com\powerbalance, during the entire duration of the **Claims Period** with a link to the **Settlement Website.**

CLASS ACTION SETTLEMENT AGREEMENT

6.5.3   The **Published Notice** and **Long Form Notice** will also appear on **Power Balance's** website, located at www.powerbalance.com, during the entire duration of the **Claims Period** with a link to the **Settlement Website.**

6.5.4   Panish, Shea & Boyle, LLP will also issue a Press Release containing information consistent with the **Published Notice**.

6.6.   <u>**Settlement Website and Telephone Number**</u>:

6.6.1   The **Claims Administrator** will create and maintain a **Settlement Website** that will contain a copy of the **Published Notice**, the **Long Form Notice**, the **Settlement Agreement**, the **Preliminary Approval Order**, the **Claim Form** and information explaining how to **Request Exclusion** from the Class or file Objections to the Settlement.  The address of the Settlement Website shall be www.pbsettlement.com.

6.6.2   The **Settlement Website** will be available on the first day of the **Claims Period** and will be taken down the day after the end of the **Claims Period.**

6.6.3   The **Claims Administrator** will also set up a toll-free number with an Interactive Voice Response (IVR) system to be used to request a copy of the **Long Form Notice**, a **Claim Form**, an address change and/or information on how to **Request Exclusion** from the **Settlement Class** or object to the **Settlement**.

6.7.   <u>**Certification of Notice**</u>: Within sixty (60) days after the commencement of the **Claims Period**, the **Claims Administrator** shall certify to the **Court** in a declaration, based on the personal knowledge of the declarant, that the **Email Notice**, the **Mailed Notice**, the **Published Notice** and the **Settlement Website**, have all been implemented in accordance with the terms of this **Settlement Agreement**.  Defendants shall be responsible for filing the declaration, and shall serve a copy of the declaration filed with the **Court** on **Class Counsel**.  A copy of the **Published Notice** as published shall be attached to the declaration.

CLASS ACTION SETTLEMENT AGREEMENT

6.8.    **Claims Period**:  The duration of the **Claims Period** will commence on the date the first published notice is available to class members May 1, 2011 or on a date to be determined by the **Court**, and will end four months thereafter.

6.9.    **Submission of Claims**:  In order to qualify for the monetary benefits set forth in Section 2.1, **Class Members** must return a completed **Claim Form** to the **Claims Administrator** during the **Claims Period**, along with the returned **Power Balance Products** and a **Proof of Purchase**.  As long as the **Claims Form** contains a postmark date during the **Claims Period**, it will be considered timely, even if the **Claim Form** is not received until after the expiration of the **Claims Period.**  In the event a **Claim Form** is returned without a postmark or the postmark is obscured or otherwise unreadable, the **Claim Form** will be considered timely if it was received by the **Claims Administrator** within one week after the end of the **Claims Period**.

6.10.   **Information Requested From Class Members**: In order to submit a **Claim**, **Class Members** will be requested to provide the following: (i) their name; (ii) their current address; (iii) their current telephone number; (iv) verification they purchased the **Power Balance Product** they are returning; (v) the **Power Balance Product(s)** they are returning for a refund; and (vi) **Proof of Purchase** for the returned product(s).

6.11.   **Bi-Weekly Reports of Claims / Notice of Rejected Claims**:

   6.11.1 The **Claims Administrator** will provide bi-weekly reports of **Claims** to **Class Counsel** and **Power Balance's Counsel** beginning after the commencement of the **Claims Period**.  The reports will include: (i) the number of **Claim** submitted; (ii) the amount of the refund for each **Claim**; (iii) any incomplete **Claims** that do not include *both* the returned **Power Balance Product(s)** and a **Proof of Purchase** (including the name of the **Class Member** and the amount of his or her **Claim**); and (iv) any **Claims** that exceed the per **Class Member** caps set forth in Sections 2.1 and 2.1.2,

6.11.2 **Power Balance** will have two (2) weeks after notice of a **Claim** through the bi-weekly reports to object to the **Claims Administrator** to the payment of any **Claim**, including the right to inspect the returned product(s) to determine if they are counterfeit.  **Power Balance** will email notice of any objections to the **Claims Administrator** and **Class Counsel**.

6.11.3 If **Power Balance** timely objects to the payment of any **Claim**, the **Claims Administrator** will notify the **Class Member** in writing of the reason the **Claim** was rejected and the **Class Member's** right to dispute that decision by way of a timely submittal to **Justice Trotter** with the requested evidence required by Sections 2.1.1, 2.1.2, and/or 2.1.3.

6.11.4 **Power Balance** will notify the **Claims Administrator** in writing if **Power Balance** will consent to a **Claim** above the per **Class Member** caps set forth in Sections 2.1 and 2.1.2 within two weeks after the end of the **Claims Period**.  If **Power Balance** does not provide its written consent, the **Claims Administrator** will reject any **Claims** for refunds in excess of the per **Class Member** caps set forth in Sections 2.1 and 2.1.2.

6.12.  <u>Payment of Claims</u>: If **Power Balance** does not object to the payment of the **Claim** during the two-week period provided in Section 6.11.2, or if the Justice Trotter determines that the **Claim** should be approved, the **Claims Administrator** will be authorized and directed to pay the Claim from the Settlement Fund within ten  (10) business days.  The **Claims Administrator** will mail a check to the **Class Member**, and the checks shall be valid for one year.  Any checks not cashed within that time shall be treated as unclaimed funds under California's Unclaimed Property Law, and the **Claims Administrator** (or the parties) shall seek an order from the **Court** directing escheatment of those funds to the State of California's Unclaimed Property Division as required by Code of Civil Procedure section 1519.5.

CLASS ACTION SETTLEMENT AGREEMENT

1   6.13.   **Payment of Remainder of Settlement Fund**:  After the expiration of one-year

2   from the date of the last check issued to a **Qualifying Class Member,** the **Claims**

3   **Administrator** will be authorized and directed to issue a check for any remaining

4   amounts in the **Settlement Fund** to the non-profit organization identified in

5   Section 2.2.

6   **7.   PRELIMINARY APPROVAL ORDER AND SETTLEMENT HEARING**

7   7.1.   Promptly upon execution of the **Settlement Agreement, Class Counsel** shall

8   apply to the **Court** for a **Preliminary Approval Order** of the **Settlement**

9   **Agreement,** together with its exhibits.  The **Preliminary Approval Order** shall

10   provide:

11   7.1.1.   For preliminary approval of the **Settlement Agreement** and directing the

12   parties to proceed to implement the terms of the **Settlement Agreement**

13   forthwith;

14   7.1.2.   For settlement purposes only, the preliminary certification of the

15   **Settlement Class;**

16   7.1.3.   For scheduling of the Final Approval Hearing;

17   7.1.4.   That the **Final Approval Hearing** may, from time to time and without

18   further notice to the **Settlement Class** (except those who filed timely and

19   valid objections), be continued or adjourned by order of the **Court;**

20   7.1.5.   That **Notice** be given;

21   7.1.6.   That there be a finding that the form and method of **Notice** constitute the

22   best notice practicable under the circumstances and constitute valid, due

23   and sufficient notice to all **Class Members**, complying fully with the

24   requirements of the Federal Rules of Civil Procedure, the Constitution of

25   the United States, and any other applicable law;

26

27

28

7.1.7. That any **Class Member** may **Request Exclusion** from the **Settlement Class** in the manner and with the consequences described in the **Notice**, and further providing that all such written requests for exclusion must be received no later than forty-five (45) days after the first day of the **Claims Period**, as stated in the **Notice**;

7.1.8. That all **Class Members** who do not, pursuant to the terms of the **Notice**, timely **Request Exclusion** from the **Class** will be bound by the **Judgment** dismissing this action on the merits and with prejudice;

7.1.9. Providing that objections by any **Class Member** to certification of the **Settlement Class**, the **Settlement Agreement** and/or the entry of the **Judgment** shall be considered by the **Court** only if such objections are in writing, contain a notice of the objector's intention to appear, state the basis of the objection(s) and are both filed with the **Court** and delivered to counsel for the respective parties (as identified in the **Notice**), so that such objections are actually received no later than forty-five (45) days after the first day of the **Claims Period**, as stated in the **Notice**;

7.1.10. Providing that no person shall be entitled to contest the certification of the **Settlement Class**, the approval of the terms and conditions of this **Settlement Agreement** or the **Judgment** except by filing and serving written objections in accordance with the preceding paragraph, and that any **Class Member** who fails to exclude himself or herself from the **Settlement Class** as so provided or who fails to object in the manner provided in the **Notice**, shall be deemed to have waived and shall be forever foreclosed from raising any such objections;

7.1.11. Establishing a date (or dates) by which the **Settling Parties** shall file and serve all papers in support of the application for final approval of the **Settlement Agreement** and/or in response to any valid and timely objections received by the counsel for the parties identified in the **Notice**.

7.1.12  Not later than 10 days after Plaintiff submits his Motion for Preliminary Approval with the Court, **Power Balance** shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, the appropriate documentation to provide notice of the proposed settlement in compliance with 28 U.S.C. §1715.

8.  **CONDITIONS OF SETTLEMENT: EFFECT OF DISAPPROVAL OR TERMINATION**

8.1.  **The Settling Parties** shall have the option to withdraw from and terminate the **Settlement** set forth in this **Settlement Agreement**, and to render this **Settlement Agreement** null and void in the event that:

8.1.1.  The **Settlement Class** is not certified by the **Court**; or

8.1.2.  This **Settlement Agreement** is not approved by the **Court**; or

8.1.3.  (i) the **Judgment** is not entered, (ii) the **Effective Date** is not reached, or (iii) the **Judgment** is materially modified or reversed on appeal.

8.2.  In the event that this **Settlement Agreement** is terminated or fails to become effective in accordance with its terms, this **Settlement Agreement**, and all negotiations and proceedings relating hereto, shall be inadmissible and without prejudice as to the rights of the **Settling Parties**, who shall be restored to their respective positions in this action as of the day preceding the signing of this **Settlement Agreement**.  In such event, the terms and provisions of this **Settlement Agreement** shall have no further force and effect with respect to the **Settling Parties** and shall not be used in this action or in any other proceeding for any purpose; and any judgment or order entered by the **Court** in accordance with the terms of this **Settlement Agreement** shall be treated as vacated, nunc pro tunc. No order of the **Court**, or modification or reversal on appeal of any order of the **Court**, concerning the amount of any attorneys' fees, costs, or expenses awarded by the **Court** to **Class Counsel**, or any incentive payment to the **Representative Plaintiff**, shall constitute grounds for, nor effect, cancellation of this **Settlement Agreement**.

8.3.  In the event this **Settlement Agreement** is terminated or fails to become effective in accordance with its terms, the **Settling Parties** shall, within two weeks of such event, jointly request a status conference with the **Court** to be held on the **Court's** first available date.  At such status conference, the **Settling Parties** shall ask the **Court's** assistance in scheduling continued proceedings in this action as between the **Settling Parties**.

9.  **MISCELLANEOUS PROVISIONS**

9.1.  The **Settling Parties** (i) acknowledge that it is their intent to consummate this **Settlement Agreement**; (ii) agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this **Settlement Agreement**, and to exercise their best efforts to accomplish the terms and conditions of this **Settlement Agreement;** and (iii) agree to take all pending motions unrelated to settlement of this action off calendar to accomplish the terms and conditions of this **Settlement Agreement.**

9.2.  **Power Balance** has denied and continues to deny each and all of the claims alleged in this action.  Neither this **Settlement Agreement** nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of either this **Settlement Agreement** or the Settlement (i) is or may be deemed to be, or may be used as, an admission, or evidence of the validity of any **Released Claim**, or of any wrongdoing by or liability of any of the **Released Persons**; or (ii) is or may be deemed to be, or may be used as, an admission, or evidence of wrongdoing or liability, or fault or omission of any of the **Released Persons** in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this **Settlement Agreement**, the Settlement or the **Judgment;** or (iii) is or may be deemed to be, or may be used as, an admission, or evidence of the propriety of class treatment of the claims alleged in a non-settlement context.

9.3.   All of the Exhibits to this **Settlement Agreement** are material and integral parts hereof and are fully incorporated herein by this reference.

9.4.   This **Settlement Agreement** may be amended or modified only by a written instrument signed by or on behalf of all **Settling Parties** or their respective successors-in-interest.

9.5.   This **Settlement Agreement** and the Exhibits attached hereto constitute the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning this **Settlement Agreement** or its Exhibits, other than the representations, warranties and covenants contained and memorialized in those documents.

9.6.   This **Settlement Agreement** may be executed in one or more counterparts. All executed counterparts, and each of them, shall be deemed to be one and the same instrument. A complete set of originally executed counterparts shall be filed with the **Court**.

9.7.   This **Settlement Agreement** shall be binding upon, and inure to the benefit of, the successors and assigns of the **Settling Parties**.

9.8.   The **Court** shall retain jurisdiction with respect to implementation and enforcement of the terms of this **Settlement Agreement** as well as the **Injunction**, and all **Settling Parties**, **Class Members**, and counsel for each hereby specially submit to the jurisdiction of the **Court** for the purposes of implementing and enforcing this **Settlement Agreement**.

9.9.   The **Settling Parties** acknowledge and agree that this **Settlement Agreement** was negotiated and drafted by the **Settling Parties**, that the terms of this **Settlement Agreement** shall be fairly construed, and that any rule of construction to the effect that any ambiguities herein should be resolved against the drafting party shall not be employed in the interpretation of this **Settlement Agreement** or any amendments, modifications or exhibits hereto or thereto.

1    9.10.   **Power Balance** represents that its Board of Directors has been given at least ten

2            (10) days to consider this **Settlement Agreement**, and that its Board of Directors

3            has duly authorized the execution of this **Settlement Agreement** by the

4            representative of **Power Balance** signing this document.

5        IN WITNESS WHEREOF, the parties hereto have caused this **Settlement Agreement** to

6    be executed:

7

8

9    DATED: March 25, 2011

     _____
     Plaintiff Andre Batungbacal, Class Representative

10

11

12   DATED: March___, 2011                  **Power Balance International, LLC**

13

14                              By  _____

15                              Its: _____

16

17

18

19

20

21

22

23

24

25

26

27

28

LLP

9.10.   **Power Balance** represents that its Board of Directors has been given at least ten (10) days to consider this **Settlement Agreement**, and that its Board of Directors has duly authorized the execution of this **Settlement Agreement** by the representative of **Power Balance** signing this document.

IN WITNESS WHEREOF, the parties hereto have caused this **Settlement Agreement** to be executed:

DATED: March ___, 2011

_____
Plaintiff Andre Batungbacal, Class Representative

DATED: March___, 2011                              **Power Balance International, LLC**

By _____

Its: _____

CLASS ACTION SETTLEMENT AGREEMENT

# EXHIBIT A

## EXHIBIT A

### Power Balance Products and retail prices

| | |
|---|---|
| Silicone and Neoprene wristbands | $29.95 |
| Silver pendant | $29.95 |
| Specialty wristbands | $32.95 |
| Silicone pendant | $34.95 |
| Bali pendant | $79.95 |
| Sheet pack holograms | $99.99 |

# EXHIBIT B

CLAIM FORM

## CLAIM FORM FOR PURCHASER OF POWER BALANCE PRODUCT(S)

If you have purchased one or more Power Balance products, including Power Balance bracelets, wristbands, pendants,, and/or other Power Balance jewelry and holograms (collectively, "Power Balance Products") in the United States, you may submit a claim for a 100% refund of the retail price for each product you return with this claim, plus a one per Class Member payment of $5.00 to cover shipping and handling expenses relating to submitting a claim. There is a limit of ten (10) claims per Class Member unless additional claims are approved by Power Balance.

In order to receive the refund, you must do each of the following steps below:

1. Fill out this Claim Form including your name and contact information (which will only be used for purposes of this Settlement)

2. Sign this Claim Form verifying that you purchased the Power Balance Product(s) you are returning

3. Place this Claim Form in an Envelope, along with *each* Power Balance Product you are returning for a refund. (In the event you no longer have the Power Balance Product for which you seek a refund, you may still make a claim, but please note that your claim may be rejected.)

4. Include in the Envelope a Proof of Purchase document (including receipts, credit card statements, or any other documents proving you purchased the Power Balance Products.) (In the event you no longer have the Proof of Purchase for Power Balance Product for which you seek a refund, you may still make a claim, but please note that your claim may be rejected.)

5. Mail the Envelope with the Completed Claim Form, returned Power Balance Product(s) and Proof of Purchase to the following address:

   PB Settlement
   Kurtzman Carson Consultants LLC
   2335 Alaska Avenue
   El Segundo, CA 90245

**Please Note that if you do not return your Power Balance Product with a Proof of Purchase, your claim for a refund may be rejected.**

**Additionally, you must mail back this Claim Form by no later than _____, or else your claim will be rejected. Make sure to use proper postage.** If there is any problem with your claim, you will be notified by the Claims Administrator, Kurtzman Carson Consultants LLC

By signing below, I agree that:

**(a)** I am the person identified below.  **(b)** I purchased the Power Balance Product(s) that I am returning with this Claim Form. I

|||||||||||||||||||||||||| Claim #: ARL-1000001-0-01  123

First Middle Last

Name/Address Changes (please type or print):

Address1

City, State, Zip Code

E-Mail Address: _____

Phone #:(\_\_\_\_)_____

Power Balance Products Being Returned:

Your Signature: _____ Date: _____

**IF YOU HAVE PURCHASED ONE OR MORE POWER BALANCE PRODUCTS, THIS NOTICE IS TO INFORM YOU OF A PROPOSED NATIONWIDE CLASS ACTION SETTLEMENT THAT COULD AFFECT YOUR LEGAL RIGHTS. THIS IS <u>NOT</u> A SOLICITATION. <u>YOU ARE NOT BEING SUED.</u>**

A lawsuit is pending in the United States District Court for the Central District of California that may affect your rights. This lawsuit, *Batungbacal et al. v. Power Balance, LLC et al.*, U.S.D.C. Case No. SACV 11-00018 CJC (MLGx), alleges that Defendant Power Balance LLC engaged in deceptive and misleading conduct in the marketing, advertising, selling, promoting, and distributing of Power Balance products, including Power Balance bracelets, wristbands, pendants, necklaces, and other Power Balance jewelry and holograms (collectively, "Power Balance Products"). The parties have reached a proposed settlement of the lawsuit. The settlement and this notice have been preliminarily approved by the Court.

The Class is identified as "all Individuals residing in the United States who purchased one or more Power Balance Products."

Subject to final Court approval, the parties have agreed to a settlement under which all Class members who are not fully satisfied with their Power Balance Product(s) will be allowed to return the product(s) for a one hundred percent (100%) refund of the retail price for *each* returned Power Balance Product, plus a one per-Class Member payment of $5.00 to cover shipping and handling expenses related to submitting a Claim. There is a limit of ten (10) claims for refund per Class Member, unless additional claims are approved by Power Balance. Power Balance has also agreed to Court-approved changes to its advertising. A final approval hearing is scheduled for ____, 2011 in Courtroom 9B of the United States District Court, Central District of California, Southern Division.

You may accept the settlement, object to the settlement, or "opt out" of the settlement. You may also appear at the hearing to state your views on the settlement. All class members who do not exclude themselves will release any claim they may have against Power Balance relating to the marketing and sale of Power Balance Products and the allegations in the lawsuit.

To obtain complete information regarding the settlement and your options, please visit www.pbsettlement.com before _____, 2011 or call 1-800-XXX-XXXX.

DO NOT CONTACT EITHER THE COURT OR ANY OF THE POWER BALANCE DEFENDANTS ABOUT THIS SETTLEMENT. ALL SETTLEMENT INFORMATION CAN BE FOUND AT www.pbsettlement.com INCLUDING CONTACT INFORMATION FOR CLASS COUNSEL.

# EXHIBIT C

**IF YOU HAVE PURCHASED ONE OR MORE POWER BALANCE PRODUCTS, THIS NOTICE IS TO INFORM YOU OF A PROPOSED NATIONWIDE CLASS ACTION SETTLEMENT THAT COULD AFFECT YOUR LEGAL RIGHTS. THIS IS NOT A SOLICITATION. YOU ARE NOT BEING SUED.**

A lawsuit is pending in the United States District Court for the Central District of California that may affect your rights. This lawsuit, *Batungbacal et al. v. Power Balance, LLC et al.*, U.S.D.C. Case No. SACV 11-00018 CJC (MLGx), alleges that Defendant Power Balance LLC engaged in deceptive and misleading conduct in the marketing, advertising, selling, promoting, and distributing of Power Balance products, including Power Balance bracelets, wristbands, pendants, necklaces, and other Power Balance jewelry and holograms (collectively, "Power Balance Products"). The parties have reached a proposed settlement of the lawsuit. The settlement and this notice have been preliminarily approved by the Court.

The Class is identified as "all Individuals residing in the United States who purchased one or more Power Balance Products at any time prior to _____, 2011."

Subject to final Court approval, the parties have agreed to a settlement under which all Class members who are not fully satisfied with their Power Balance Product(s) will be allowed to return the product(s) for a one hundred percent (100%) refund of the retail price for *each* returned Power Balance Product, plus a one per-Class Member payment of $5.00 to cover shipping and handling expenses related to submitting a Claim. There is a limit of ten (10) claims for refund per Class Member, unless additional claims are approved by Power Balance. Power Balance has also agreed to Court-approved changes to its advertising. A final approval hearing is scheduled for _____, 2011 in Courtroom 9B of the United States District Court, Central District of California, Southern Division.

You may accept the settlement, object to the settlement, or "opt out" of the settlement. You may also appear at the hearing to state your views on the settlement. All class members who do not exclude themselves will release any claim they may have against Power Balance relating to the marketing and sale of Power Balance Products and the allegations in the lawsuit.

To obtain complete information regarding the settlement and your options, please visit www.pbsettlement.com before _____, 2011 or call 1-800-XXX-XXXX.


DO NOT CONTACT EITHER THE COURT OR ANY OF THE POWER BALANCE DEFENDANTS ABOUT THIS SETTLEMENT. ALL SETTLEMENT INFORMATION CAN BE FOUND AT www.pbsettlement.com INCLUDING CONTACT INFORMATION FOR CLASS COUNSEL.

# EXHIBIT D

**TO: ALL INDIVIDUALS WHO HAVE PURCHASED ONE OR MORE POWER BALANCE PRODUCTS**

**PLEASE READ THIS NOTICE CAREFULLY, AS IT MAY AFFECT YOUR RIGHTS. YOU ARE <u>NOT</u> BEING SUED.**

This Notice is being provided to inform you of a proposed settlement of a class action lawsuit brought by a purchaser of products offered for sale by Power Balance, LLC ("Power Balance").

**THIS NOTICE SUMMARIZES THE PROPOSED SETTLEMENT AND ADVISES YOU OF:**

      1.     **A DESCRIPTION OF THE LAWSUIT;**
      2.     **THE BENEFITS YOU ARE ENTITLED TO UNDER THE SETTLEMENT;**
      3.     **YOUR RIGHT TO OPT OUT OF THE SETTLEMENT; AND**
      4.     **YOUR RIGHT TO FILE AN OBJECTION TO THE TERMS OF THE SETTLEMENT WITH THE COURT**

**I.     DESCRIPTION OF LAWSUIT**

Andre Batungbacal has filed a nationwide class action lawsuit against Power Balance, Josh Rodarmel, Troy Rodarmel, and Keith Kato ("Defendants") on behalf of the Class. In general terms, the lawsuit alleges that Defendants engaged in deceptive and misleading conduct in the marketing, advertising, selling, promoting, and distributing of Power Balance products, including Power Balance bracelets, wristbands, pendants, necklaces, and other Power Balance jewelry and holograms (collectively, "Power Balance Products"). The claims were brought under California's Unfair Competition Laws (Business & Professions Code Section 17200, *et seq.*) ("UCL"), California's False Advertising Laws Business & Professions Code Section 17500, *et seq.*) ("FAL"), and California's Consumer Legal Remedies Act (Civil Code Section 1770(a)(5) ("CLRA").

Defendants deny that their practices were unfair, unlawful or unconscionable.

The case was brought in January 2011. The parties engaged in arms length negotiations, including mediation on February 4, 2011 before noted mediator the Honorable John K. Trotter (Ret.). The mediation continued after that first session until this settlement was reached.

The Court has preliminarily approved the settlement, and directed the parties to send Notice to the Class to inform Class Members of their rights and options as discussed below.

## II.     DEFINITION OF CLASS

For settlement purposes, the Court has conditionally defined the "Class" as follows: all individuals in the United States who purchased one or more Power Balance Products any time prior to _____, 2011.

## III.     SUMMARY OF PROPOSED SETTLEMENT

Subject to Court approval, the Class Representative, acting on your behalf, and Defendants, have agreed upon a proposed settlement under which this case will be resolved without a trial. This settlement includes:

### A.     Monetary Payment to Purchasers of Power Balance Products

All Class members who are not fully satisfied with their Power Balance Product(s) will be allowed to return the product(s) for a one hundred percent (100%) refund of the retail price for *each* returned Power Balance Product, plus an additional one per Class member payment of $5.00 to cover shipping and handling expenses related to submitting a Claim. There is a limit of ten (10) returned products per Class Member, unless refunds for the additional returned products are approved by Power Balance.

**How do I obtain the cash payment?**

In order to obtain a refund plus an additional one per Class member payment of $5.00, Class Members must complete, sign and return the Claim Form and return their Power Balance Product(s) with a Proof of Purchase to the Claims Administrator Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 by _____. Copies of the Claim Form may be found by visiting www.pbsettlement.com.

Class Members will only be entitled to receive one payment of $5.00 to cover shipping and handling expenses, regardless of the number of products returned. Class Members will only be entitled to receive a refund for the Power Balance Product(s) that are returned to the Claims Administrator and which are accompanied by a corresponding Proof of Purchase, subject to certain exceptions.

**What happens if I do not return a Claim Form?**

If a Class Member returns his or her Claim Form, but does not return the Power Balance Product or provide a Proof of Purchase, then the Class Member may still receive a full refund, plus an additional $5.00, so long as Power Balance does not object to the Claims Administrator providing a refund. If such a Claim is rejected, the Class Member will have the right to challenge the initial rejection of his or her Claim to the Honorable John K. Trotter (Ret.) who served as the mediator in this matter.

### B.    Settlement Fund

Power Balance will create a Settlement Fund initially totaling five hundred thousand dollars ($500,000.00) from which to pay Class Members' Claims.   After all Class Members' Claims have been paid from the Settlement Fund, the remaining amounts in the Settlement Fund, if any, shall be paid to the following non-profit organization dedicated to fighting against childhood obesity NBA Fit.  If the total amount of the Claims exceeds five hundred thousand dollars ($500,000), Power Balance will pay those claims directly to the Class Members through the Claims Administrator.

### C.    Injunctive Relief

Power Balance has agreed to entered into a permanent Court Ordered Injunction changing its advertising.  A copy of the Injunction is attached hereto as Exhibit

### D.    Class Representative Incentive Payment and Class Counsel's Fees and Costs

The Class Representative intends to ask the Court for approval of an enhancement payment in the amount of five hundred dollars ($500.00) to compensate him for the time, effort and expense he has incurred while acting as a Class Representative.  Any money awarded for an enhancement payment will be paid directly from Defendants outside of the Settlement Fund, and will not reduce the Settlement Fund.  The Settlement is not contingent on approval of an enhancement award.

The Class is represented by Kevin Boyle, Esq. and Rahul Ravipudi, Esq. of Panish, Shea & Boyle LLP, 11111 Santa Monica Blvd., Ste. 700, Los Angeles, CA 90025 and Filippo Marchino and Damon Rogers of the X-Law Group, P.C., 633 W. 5th St., 26th Floor., Suite 2629, Los Angeles, CA 90071.

Class Counsel intends to ask the Court for approval pursuant to of an award of reasonable attorneys' fees and costs.  Defendants have agreed that they will not oppose or object to Class Counsel's application for fees and costs so long as Class Counsel requests less than one million dollars ($1,000,000) in fees and costs.  Any award of attorneys' fees and costs will be paid directly by Defendants outside of the Settlement Fund and will not reduce the Settlement Fund.  The Settlement is not contingent on approval of any specific amount of fees and costs.

### E.    Administration and Distributions to Class Members

The Court has appointed Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 to act as the Independent Claims Administrator ("Claims Administrator") to administer and oversee this Notice and settlement.   The Claims Administrator and the cost of providing notice and administering this Settlement will be

paid directly by Defendants outside of the Settlement Fund, and will <u>not</u> reduce the Settlement Fund.

### F.      Release of Claims

Unless you file an opt-out statement pursuant to Section IV below, you will be bound fully by the terms of the proposed settlement. Specifically, you will be deemed to have generally released all causes of action, liabilities, damages, demands, rights, or equitable, legal, or administrative relief, of any basis or source, whether known or unknown, that were, or could have been, now, in the past, or in the future, asserted or alleged in, or that relate to any claims raised in the action entitled *Batungbacal v. Power Balance, LLC, et al.*, U.S.D.C. Case No. SACV11-00018 CJC (MLGx), including but not limited to (i) whether the advertising of any Power Balance Products violate any applicable laws, rules or regulations, including, but not limited to, state or federal laws, rules or regulations; (ii) whether Defendants made false or misleading statements when advertising their products; (iii) whether Defendants misrepresented the benefits or characteristics of their products; (iv) whether Defendants engaged in fraudulent, unfair or unlawful business practices in violation of California Business & Professions Code Section 17200 *et seq.* and 17500 *et seq.*; and (v) whether Defendants violated any provisions of the California Consumer Legal Remedies Action, California Civil Code Section 1770 *et seq.*

### IV.    YOUR OPTIONS AS A CLASS MEMBER

As a Class Member, you have three options available to you at this time:

A.      If you are a Class Member, you may submit a Claim Form and Power Balance Product with proof of purchase to receive the cash payment described above. If you submit less than all of these items, however, your claim may be rejected.

B.      You may object personally or through an attorney to the proposed settlement in writing. All objections are to be filed with the Clerk of the United States District Court for the Central District of California, Southern Division, 411 West Fourth Street, Santa Ana, California 92701-4516 by _____, 2011 with copies sent to the counsel identified below by _____, 2011. If you wish to object to the settlement through your own attorney and at your own expense, your attorney must notify the Clerk of Courtroom 9B, and the attorneys for the parties as described in Section VI of this Notice; or

C.      You may exclude yourself from the settlement of this lawsuit by filing a signed, written "opt-out" statement and mailing it to: Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245.    Your opt-out statement must be postmarked by _____, 2011.   Please print your first and last name, address and claim number as they appear on your Claim Form. Your

request should use the words "I wish to be excluded from the Batungbacal v. Power Balance class action settlement" and must be signed. If you opt out of this lawsuit: (i) you will have no right to receive any benefits under this settlement; (ii) you will not be bound by the settlement in this lawsuit; and (iii) you may bring your own proceeding against Defendants for the claims described above.

## V.   CLASS REPRESENTATIVES AND CLASS COUNSEL

The Court has ruled that this action is properly certified as a class action for settlement purposes, and that Andre Batungbacal is an adequate class representative. The Court's ruling is not a decision about the merits of the case.

As noted above, the law firms of Panish, Shea & Boyle LLP and X-Law Group, P.C. have been appointed by the Court to act as the attorneys for the Class ("Class Counsel"). Should you wish to obtain further information about the case, you may address your inquiries to the attorneys for the Class:

Kevin Boyle, Esq. and Rahul Ravipudi, Esq.
Panish, Shea & Boyle LLP
11111 Santa Monica Blvd., Ste. 700
Los Angeles, CA 90025
Tel: (310) 477-1700
Fax (310) 477-1699


Filippo Marchino and Damon Rogers
X-Law Group, P.C.
633 W. 5th St., 26th Floor., Suite 2629
Los Angeles, CA 90071
Tel.: (213) 223-2232
Fax: (213) 226-4691

## VI.   HEARING ON PROPOSED SETTLEMENT

A hearing to determine whether the proposed settlement is fair and reasonable and should be finally approved will be held on _____ at _____ in Courtroom 9B of the United States District Court for the Central District of California, Southern Division, unless that date is changed by the Court.

You are welcome to attend the hearing, but it is not necessary for you to be there. If you wish to be represented at the hearing by your own attorney and at your own expense, your attorney must notify the Court in Courtroom 9B, and the following attorneys in writing, and such notification must be filed with the Court and mailed to all counsel, by

**For the Class:**

Kevin Boyle, Esq.
Rahul Ravipudi, Esq.
Panish, Shea & Boyle LLP
11111 Santa Monica Blvd., Ste. 700
Los Angeles, CA 90025

**For Defendants**

Michael Avenatti, Esq.
Jason Frank, Esq.
Eagan Avenatti LLP
450 Newport Center Drive 2nd floor
Newport Beach, CA 92660

## VII.   ADDITIONAL INFORMATION

### Inspection of Pleadings/Other Court Records

The pleadings and all other records of this litigation may be examined and copied any time during regular office hours in the office of the Clerk at 411 West Fourth Street, Santa Ana, California 92701-4516. You can additionally access such records for a fee by visiting the website www.pacer.gov.

### Questions Regarding the Settlement or this Notice

If you have any questions about the proposed settlement or this Notice, you may visit the website for this settlement at www.pbsettlement.com or write to the Claims Administrator at Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245. A complete copy of the Complaint, the Settlement Agreement and the Preliminary Approval papers can be found at www.pbsettlement.com.

### Change of Address

It is important for the parties to have your residential address, email address and telephone number in order to be able to send you other mailings regarding the lawsuit. If you receive notice of this settlement via email or if you submit a Claim Form, please report any changes of your residential address, email address or telephone number after you receive the notice or after you send in your Claim Form. You should write to the Claims Administrator, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245. Failure to report a change of address may result in you not receiving certain benefits of settlement. When writing, include your first name, last name, old email address, new email address and claim number from the claim form if it is available to you.

DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE.
THE CLERK IS NOT ABLE TO PROVIDE ANY INFORMATION OR ADVICE
REGARDING THIS NOTICE.

The United States District Court, Central District of California, Southern Division
authorized this Notice.

7

# EXHIBIT E

<u>EXHIBIT "E"</u>

**FACEBOOK NOTICE**

**IF YOU HAVE PURCHASED ONE OR MORE POWER BALANCE PRODUCTS PRIOR TO ____, 2011, THERE IS A PROPOSED NATIONWIDE CLASS ACTION SETTLEMENT THAT MAY AFFECT YOUR LEGAL RIGHTS – FOR DETAILS GO TO WWW.PBSETTLEMENT.COM.**

# EXHIBIT F

PANISH SHEA & BOYLE LLP
KEVIN BOYLE, State Bar No. 192718
        boyle@psblaw.com
RAHUL RAVIPUDI, State Bar No. 204519
        ravipudi@psblaw.com
11111 Santa Monica Blvd., Ste. 700
Los Angeles, CA 90025
Tel:    (310) 477-1700
Fax:    (310) 477-1699

THE X-LAW GOUP, PC
FILIPPO MARCHINO, State Bar No. 256011
        filippo.marchino@xlawx.com
DAMON ROGERS, State Bar No. 263853
        damon.rogers@xlawx.com
633 W. 5th St., 26th Floor., Suite 2629
Los Angeles, CA 90071
Tel:    (213) 223-2232
Fax:    (213) 226-4691

Attorneys for Plaintiff

EAGAN AVENATTI, LLP
MICHAEL J. AVENATTI, Bar No. 206929
JASON M. FRANK, Bar No. 190957
450 Newport Center Drive, Second Floor
Newport Beach, CA 92660
Tel:    (949) 706-7000
Fax:    (949) 706-7050

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANDRE BATUNGBACAL, an individual and on behalf of a class of similarly situated persons,<br><br>            Plaintiffs,<br><br>        v.<br><br>POWER BALANCE LLC, a Delaware Limited Liability Company, TROY JOHN RODARMEL, an individual, JOSH RODARMEL, an individual, KEITH KATO, an individual, and, DOES 1-10, inclusive,<br><br>            Defendants. | **NATIONWIDE CLASS ACTION**<br><br>Case No. SA CV11-00018 CJC (MLGx)<br><br>**[PROPOSED] STIPULATED FINAL INJUNCTION AGAINST DEFENDANT POWER BALANCE LLC** |

On _____, this matter came before the **Court** for final approval of the Class Action Settlement Agreement ("**Settlement Agreement**") reached between the Plaintiff **Class** and Defendant **Power Balance**. The terms used in this **Injunction** shall have the same meaning as defined in the **Settlement Agreement.**

The **Court** has determined that the **Settlement Agreement** is fair and adequate as to all **Class Members**. Pursuant to the terms of that **Settlement Agreement**, which the **Court** has now finally approved, and good cause appearing therefore, **Power Balance** is hereby is enjoined as follows:

1.     **Power Balance** will not represent in any advertising to potential U.S. customers (including, but not limited to, any written or oral representations) that **Power Balance Products** will improve balance, strength or flexibility or that **Power Balance Products** work with your body energy, unless and until **Power Balance** is able to provide to the **Court** evidence that supports such representations.

2.     **Power Balance** will not use a **Muscle Test** to demonstrate the potential benefits of its **Power Balance Products** to prospective U.S. customers, unless and until **Power Balance** is able to provide the **Court** with evidence demonstrating the efficacy of the **Muscle Test.** **Power Balance** will use its best efforts to remove postings demonstrating the **Muscle Test** that appear on its website or You Tube. **Power Balance** will not post any demonstrations of the **Muscle Test** on the internet after the **Effective Date** of the **Settlement Agreement.** Notwithstanding the foregoing, it will not be a violation of the **Injunction** if a posting demonstrating the **Muscle Test** appears on the internet and was posted prior to the **Effective Date** and/or is posted by a third party.

3.     When advertising its products, **Power Balance** will be permitted to include the representations or phrases used in the attached Exhibit "A," and/or other representations and phrases consistent with Exhibit "A."

4.     This injunction shall remain in effect indefinitely from the date of the issuance of the injunction, unless subsequently modified or revoked by the **Court**. The **Court** retains

1

jurisdiction over the parties to enforce this injunction, and to hear requests for modification as set forth in Section 2.3 of the **Settlement Agreement**.


IT IS SO ORDERED.

Dated: _____, 2011        _____

                                            The Honorable Cormac J. Carney
                                            United States District Court Judge

## Exhibit "A"

1.   Power Balance™ is committed to bringing performance innovation to every athlete in the world from professional to recreational. We want everyone, no matter their level of activity, to maximize their potential and live life to the fullest.

2.   Power Balance™ is committed to creating quality, innovative products for those who live active lifestyles and are looking for an edge. Power Balance™ athletes vary widely across sports and disciplines but have one thing in common: they believe in Power Balance™. For many — performance is critical to their success.

3.   Power Balance™ is dedicated to compassionate business practices, a firm belief in our product, and helping people every day.

4.   The founders of Power Balance™ have always believed in the benefits of various holistic practices and Eastern philosophies and set out to develop a product to more easily and affordably embody these beliefs.

5.   Power Balance - Performance Technology™

6.   Created by Athletes for Athletes.

7.   Power Balance™ is a favorite among elite competitors, weekend warriors and every day fitness enthusiasts.

8.   Power Balance™ contains a thin polyester film hologram, which reacts differently for each person. Give it a try and see what it does for you.

9.   The thin polyester film hologram is programmed through a proprietary process, which is designed to mimic Eastern philosophies that have been around for hundreds of years.

10.   Power Balance™ athletes believe in the product-for them, performance is critical to this success. The numbers of users continue to grow - try it for yourself!

11.   The company was created out of the principle that the founders wanted everyone, no matter what their level of activity, to maximize their potential and live life to the fullest.

12.   We have heard from fitness professionals, athletes, coaches and personal trainers who tell us they have experienced benefits from Power Balance™ for themselves, their clients and teams.

13.   Power Balance™ products are programmed in the United States. The silicone/neoprene wristbands are manufactured in China.

14.   The holograms are designed to last indefinitely.

15.     While we have received testimonials and responses from around the world about how Power Balance™ has helped people, there is no assurance it can work for everyone. That's why we offer a no-questions-asked, money-back guarantee: If you're not satisfied, just return the product within 30 days with proof of purchase.

16.     There are not any differences between Power Balance™ Products.  It is simply a matter of personal preference.

17.     The Wristband can get wet.

18.     Power Balance™ Products do not need to touch your skin.

19.     It does not matter which wrist you wear you Wristband on.

20.     The product can be worn risk-free for 30 days and returned anytime within that period with a receipt.

[PROPOSED] STIPULATED FINAL INJUNCTION

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of March 2011, I electronically filed the foregoing

**NATIONWIDE CLASS ACTION SETTLEMENT AGREEMENT** with the Clerk of Court

using the CM/ECF system, which will automatically send email notification of said filing to the

following counsel of record registered:

Michael Avenatti
Eagan Avenatti, LLP
450 Newport Center Drive
Second Floor
Long Beach, CA  92660
*Attorneys for Defendants*

DATED: March 25, 2011

By: _____
Esparanza Jones