PANISH SHEA & BOYLE LLP
KEVIN BOYLE, State Bar No. 192718
  boyle@psblaw.com
RAHUL RAVIPUDI, State Bar No. 204519
  ravipudi@psblaw.com
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

THE X-LAW GROUP, PC
FILIPPO MARCHINO, State Bar No. 256011
  filippo.marchino@xlawx.com
Damon Rogers, State Bar No. 263853
  damon.rogers@xlawx.com
633 W. 5th St., 26th Floor, Suite 2629
Los Angeles, CA 90071
Telephone: 213.223.2232
Facsimile: 213.226.4691

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANDRE BATUNGBACAL, an individual and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>POWER BALANCE LLC, a Delaware Limited Liability Company, TROY JOHN RODARMEL, an individual, JOSH RODARMEL, an individual, KEITH KATO, an individual, and DOES 1 through 10, inclusive,<br><br>    Defendants. | **NATIONWIDE CLASS ACTION**<br><br>Case No. SA CV11-00018 CJC (MLGx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................2

II.   BACKGROUND .......................................................................4

    A.   Procedural History.............................................................4

    B.   Factual Allegation of Plaintiff..........................................5

    C.   Factual Allegations of Power Balance .............................6

    D.   The Settlement...................................................................6

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .........................................................................10

IV.   THE PARTIES HAVE STIPULATED TO CERTIFICATION FOR PURPOSES OF SETTLEMENT AND CERTIFICATION IS APPROPRIATE ......................................................................13

    A.   The Requirement of Numerosity Is Satisfied.................13

    B.   The Requirement of Commonality Is Satisfied...............13

    C.   The Requirement of Typicality Is Satisfied ....................14

    D.   The Requirement of Adequate Representation Is Satisfied ..............14

    E.   The Settlement Class Should be Certified Under Rule 23(b)(3) ..........15

V.    THE PROPOSED NOTICE IS REASONABLY CALCULATED TO REACH MEMBERS OF THE CLASS.....................................16

VI.   PROPOSED SCHEDULE OF EVENTS .....................................18

VII.  CONCLUSION.........................................................................19

# **TABLE OF AUTHORITIES**

**Page**

## CASES

*Amchem Prods.,* 521 U.S. at 623 ............................................................15

*Amchen Products, Inc. v. Windsor*, 521 U.S. 591 (1997)............................13

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975) ...................................15

*Class Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992)........................12

*In Re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2nd Cir. 2001).......13

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980) ..........................17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..........10, 12

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)..................16

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989)............................................................10

*Wright v. Linkus Enterprises, Inc.* (E.D. Cal. 2009) 259.............................15

## OUT OF STATE CASES

Fed. R. Civ. P. 23(a)...................................................................13

Fed. R. Civ. P. 23(b) ............................................................. 13, 15, 16

Fed. R. Civ. P. 23(e)...................................................................10

## STATUTES

California Business & Professions Code § 17200 ....................................14

California Business and Professions Code §§ 17200 ...............................3, 5

California Civil Code § 1750 ...........................................................3

Fed.R.Civ.P. 23(c)(2)(B)..............................................................16

*Manual for Complex Litigation, Fourth* (Federal Judicial Center 2004) ............10, 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

On June 20, 2011, this Court vacated its April 25, 2011 Order preliminarily approving the Class Action Settlement so as to allow the parties to conduct further discovery and determine whether the Power Balance Defendants indeed desired – and had the financial wherewithal – to resolve this lawsuit through a Nationwide Class Action settlement.  After extensive discovery and meeting and conferring, the parties reached the substantially same Nationwide Class Action Settlement and Power Balance is prepared to explain to the Court how it will effectuate the terms of the settlement.  Based upon that, for all of the reasons explained in more detail below, Plaintiff renews his Motion for Preliminary Approval and certification of a Nationwide Settlement Class.

This litigation is based on the allegation that since 2007 Power Balance has engaged in the practice of advertising, selling and distributing Power Balance Accessories, which contain one or more "Mylar Holograms", represented as being able to work and interact with a body's natural energy flow thereby yielding physiological benefits when worn close to the body.  Specifically, Power Balance represented that the bracelets and accessories increased one's strength, endurance and flexibility.

Andre Batungbacal was one of the consumers in the United States who relied on these representations and bought a Power Balance bracelet.  In December 2010, the Australian and Italian government consumer watchdog agencies independently made findings that there was not sufficient scientific support for the representations that Power Balance products increased one's strength, endurance and flexibility.  On January 4, 2011, Andre Batungbacal filed a complaint against Power Balance, Troy John Rodarmel, Josh Rodarmel, and Keith Kato (the "Power Balance Defendants") on behalf of himself and a purported nationwide class of purchasers in the United

1   States alleging that the Power Balance Defendants' representations and practices

2   with respect to the Power Balance Accessories constituted an unfair business

3   practice prohibited by California Business and Professions Code §§ 17200 *et seq.*, as

4   well as fraud, deceit, and negligence, violation of the Consumer Legal Remedies

5   Act through California Civil Code § 1750, et. seq., and that Power Balance

6   benefitted from unjust enrichment as a result of that practice.

7       In an effort to seek actual damages from the Power Balance Defendants in

8   addition to restitution, on January 7, 2011, Plaintiff served the Power Balance

9   Defendants a cease and desist letter in compliance with Civil Code §1782(d)

10  ("CLRA Letter").

11      After receipt of the Complaint and the CLRA Letter, Power Balance retained

12  counsel who immediately contacted Plaintiff's counsel and expressed an intent to

13  comply with the CLRA Letter and a desire to resolve any and all issues arising out

14  of the Complaint.

15      While Power Balance denies any wrongdoing or legal liability arising out of

16  these allegations, the parties have reached an agreement to settle this action on the

17  terms set forth in the Stipulation and Agreement of Settlement (the "Settlement

18  Agreement"), which is attached hereto as Exhibit 1.[1]  A fully executed copy of the

19  Settlement Agreement will be filed with the Court after all parties have signed.  This

20  document represents the final version of the Settlement Agreement as agreed to by

21  the attorneys for all parties.

22      The Class, certified for settlement purposes only, is comprised of all persons

23  _____

24  [1]Plaintiffs represent to the Court, as required by Rule 23(e)(3), that there are no
    "side agreements" made in connection with the proposed settlement of this action
25  and that the Settlement Agreement attached hereto as Exhibit 1 represents the full,
    complete and exclusive terms and conditions applicable to the proposed settlement.
26  The agreement was the product of an arm's length negotiation including a mediation
    on February 4, 2011 before noted mediator Honorable John K. Trotter (Ret.).
27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

in the United States who purchased Power Balance products from January 1, 2006 to the day immediately preceding the beginning of the Claims Period as set by the Court. The Settlement Agreement provides for the full refund of the retail price of the Power Balance Product covered by the settlement to any Class Member who makes a claim , plus an additional $5.00 to cover shipping and handling expenses – all of the Class Members' actual damages. With approximately 1.7 million Power Balance Products sold in the United States, the value of the proposed settlement to the Class is in excess of $57,000,000.00. This is $29,000,000.00 more than the largest recovery possible had Plaintiff proceeded to trial and obtained an award for restitution only as many of the Power Balance Products sold in the United States by retailers for which Power Balance pocketed the wholesale price.

The Settlement Agreement is the result of arm's-length negotiations between the parties occurring with the substantial assistance during mediation held on February 4, 2011 before noted mediator the Honorable John K. Trotter (Ret.) and continuing through September 2011. The parties now ask this Court to enter an order:

(1)     granting preliminary approval of the proposed settlement;

(2)     certifying the class for the purposes of settlement only;

(3)     approving the proposed form and method of giving notice to the Class of the pendency of this action and the settlement;

(4)     scheduling dissemination of the notice; and

(5)     scheduling a hearing on final approval of the settlement and plaintiffs' counsel's application for an award of attorneys' fees and reimbursement of expenses.

## II.     BACKGROUND

### A.     Procedural History

Plaintiff Andre Batungbacal commenced the instant lawsuit by filing a Class

4

1  Action Complaint against Defendants, Power Balance, LLC, a Delaware Limited

2  Liability Company, Troy John Rodarmel, an individual, Josh Rodarmel, an

3  individual, Keith Kato, in United States District Court for the Central District of

4  California, Case Number SA CV11-00018 CJC (MLGx) on January 14, 2011.  This

5  Settlement stemmed from a mediation attended by counsel and this Motion is

6  brought as a coordinated effort by the parties in this action.

7       The instant action alleges that Power Balance committed unfair business

8  practices prohibited by California Business and Professions Code §§ 17200 *et seq.*,

9  fraud, deceit and negligence and benefitted from unjust enrichment.

10       On April 25, 2011, this Court granted Plaintiff's Motion for Preliminary

11  Approval and certified a Nationwide Settlement Class.  Subsequent to the

12  certification, issues arose as to Power Balance's intent to comply with the terms of

13  the Settlement Agreement, all of which were briefed and addressed with this Court.

14  As a result of the issues, the Court permitted Plaintiff the right to conduct expedited

15  discovery on issues relating to the financial state of Power Balance.  Plaintiffs

16  obtained hundreds of pages of correspondence and financial documents and took the

17  depositions of Power Balance officers and Denny Barge, an employee of Power

18  Balance's sole supplier, Contec.  The parties then appeared before the Court who

19  found that Power Balance's financial stability was not adequately disclosed at the

20  time of initially granting Preliminary Approval on April 25, 2011.  As a result, the

21  Court vacated its Order granting Preliminary Approval and allowed the parties sixty

22  days to meet and confer and conduct discovery to determine Power Balance's ability

23  and interest in reaching a settlement in good faith.

24      **B.**    **Factual Allegation of Plaintiff**

25       Defendant Power Balance LLC ("Power Balance") has distributed in

26  commerce the Power Balance Accessories throughout the United States, Europe and

27  Australia.  The Accessories, which purportedly contain one or more "Mylar

28  Holograms", were marketed as being able to work and react with a body's natural

1   energy flow thereby yielding physiological benefits when worn close to the body.

2   Specifically, it was  represented and marketed that the instant benefits of the Power

3   Balance Accessories included "increased core strength," "greater flexibility," and

4   "improved balance."

5        Plaintiff contends that Power Balance did not and does not maintain any

6   credible scientific evidence that supported the representations or claims made to the

7   public.  Plaintiff contends that, overall, Power Balance's print, online and in-store

8   advertisements misled consumers into believing Power Balance Accessories

9   maintained properties which benefitted users and consumers by delivering improved

10   strength, flexibility and balance.  Plaintiff further contends that Power Balance has

11   been unjustly enriched at the expense of Plaintiff and the Class members who

12   purchased Power Balance Products and Accessories.

13

14   **C.    Factual Allegations of Power Balance**

15        No answer has been filed by Power Balance in the instant case.  After

16   protracted and lengthy discussions, Plaintiff is informed that Power Balance

17   believes in its products and that customers are satisfied with the performance of the

18   products.  Power Balance further contends that Plaintiff would have a difficult time

19   certifying a class and proving liability or damages.  In particular, there were varying

20   representations over time, which will lead to individual questions of representations

21   and reliance predominating.  Furthermore, Power Balance contends that the

22   overwhelming majority of the putative class members are satisfied with the product

23   which will make Plaintiff's claims atypical, and will make causation an issue

24   defeating class certification.  For the same reasons, Power Balance contends that

25   liability and damages are unsupported and cannot be proven.

26

27   **D.    The Settlement**

28        In the months since the filing of the instant action all parties expended

6

1  substantial amounts of time, energy, and resources[2] to investigate and develop their

2  respective positions.  Based on their prosecution of this case and their independent

3  evaluation, counsel for the Class are of the opinion that the settlement with Power

4  Balance for the consideration and on the terms set forth in the Settlement Agreement

5  is fair, reasonable, and adequate, and in the best interest of the Class in light of all

6  known facts and circumstances, including the risk of delay, defenses asserted by

7  Power Balance and potential appellate issues.[3]

8       Since the Court vacated its Preliminary Approval order, the parties engaged in

9  significant discovery and meeting and conferring which only bolstered the

10 importance and benefit in reaching a settlement now.  Power Balance served

11 verified responses to Plaintiff's discovery and produced significant documentation

12 which included its earnings and losses to date and forecasts through the end of the

13 year.  In addition, Power Balance provided sworn declarations from its Chairman of

14 the Board, Henry Adamany, and President, Keith Kato.  In addition, Power Balance

15 made available directly to Plaintiff's retained economist, Dr. Andrew Safir, Mort

16 Bachman, a member of Power Balance's Board, a CPA, and assisting the CFO of

17 Power Balance on the relevant financial reporting matters, to answer any additional

18 questions he had to be informed as to the financial status and future viability of the

19 company.

20

21  [2]  As part of their settlement efforts, the parties agreed to participate in formal
22  mediation on February 4, 2011 before noted mediator the Honorable John K. Trotter
23  (Ret.).  The parties reached a preliminary settlement on all material terms at the
    mediation, and afterward, continued with confirmatory discovery and detailed
24  negotiations as to the material terms of the agreement.  After six weeks of constant
25  negotiations, the Settlement Agreement was finalized and executed.

26  [3]  It would be Power Balance's position in litigation that a class could not be
    certified because of individual issues of fact and law would not predominate.  For
27  example, varying issues of reliance and satisfaction, among other things.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   At the end of this arduous process, several things were clear. First, Power

2   Balance has an overwhelming desire to resolve this matter through a Nationwide

3   Class Action Settlement and has every intention of complying with all of its

4   obligations under the Settlement Agreement. Second, Power Balance's financial

5   status is not promising. It is operating at a loss and is projected to operate at a loss

6   through the year. However, Power Balance has taken significant steps to position

7   itself to meet its obligations under the Settlement Agreement: (a) Power Balance

8   underwent a significant change in control where the members of the Board and most

9   of the Officers have been replaced; (b) new management at Power Balance

10  renegotiated its debt with Contec and has obtained forbearance of any repayment

11  obligations through the end of 2011; and (c) Power Balance is making an effort to

12  obtain additional funding. Based upon all of the information provided, the putative

13  class is the best position to effectuate a settlement now.

14  Similarly, Power Balance has concluded that any further defense of this

15  Litigation would be protracted and expensive. Substantial amounts of Power

16  Balance's time, energy, and resources have been and, absent this Settlement

17  Agreement, will continue to be devoted to the defense of the claims asserted by

18  Plaintiff. Power Balance has also assessed the risk of a finding against it, and the

19  monetary exposure associated therewith, and has taken into account the settlement

20  negotiations to date. Power Balance has therefore agreed to settle in the manner and

21  on the terms set forth in the Settlement Agreement.

22  The Class, certified for settlement purposes only, is comprised of all persons

23  in the United States who purchased Power Balance products from January 1, 2006 to

24  the day immediately preceding the beginning of the Claims Period, which will

25  commence on a date to be determined by the Court. The Claims Period will end

26  four (4) months after the date it begins.

27  Pursuant to the proposed Settlement Agreement Power Balance will provide

28  for the full refund (100%) of the retail price of the Power Balance Product(s) to any

8

1  Class Member who makes a claim, plus an additional $5.00 to cover shipping and

2  handling expenses.[4]  A list of the Power Balance Products and their retail prices are

3  attached as Exhibit A to the Settlement Agreement.  Power Balance will create an

4  evergreen settlement fund starting with an initial five hundred thousand dollars

5  ($500,000.00) from which to pay claims.  This will be funded on the first day of the

6  claims period and replenished so that at no time will the settlement fund have less

7  than two hundred and fifty thousand dollars ($250,000.00), until all claims have

8  been paid.  Each Member of the Class who does not opt-out of the Settlement

9  Agreement will be eligible to receive a full refund (100%) of the entire retail price

10  of the Power Balance Product(s) purchased.  This will amount in a greater recovery

11  for Class members than if Power Balance was proven at trial to have been unjustly

12  enriched and thereby required to disgorge monies earned as restitution. (*See*

13  Declaration of Andrew Safir  ¶.20).

14       In addition to a full refund as part of the settlement Power Balance will agree

15  to a permanent Injunction and change their advertising and marketing practices

16  accordingly.  As part of this injunction, Power Balance will not represent in any

17  advertising to potential customers (including, but not limited to, any written or oral

18  representations) that Power Balance Products will "improve balance, strength or

19  flexibility" or that Power Balance Products "work with your body energy," unless

20  and until Power Balance is able to provide the Court with evidence that supports

21  such representations.  Power Balance also will not use what Plaintiff contends are

22  misleading live demonstrations seeking to demonstrate the potential benefits of their

23

24  [4] The Settlement Agreement permits a claim of up to 10 Power Balance Products per
    class member and Power Balance may approve any claims made above that.  The
25  cap of 10 was instituted to protect Power Balance from fraudulent claims.  Based
    upon the confirmatory discovery, the average purchaser bought two Power Balance
26  Products.  Therefore, the cap of 10 per claim per class member was considered
27  reasonable.

28

9

1   Products, unless and until Power Balance is able to provide this Court with evidence
2   demonstrating the accuracy of such tests and demonstrations.  Moreover, Power
3   Balance will use its best efforts to remove any video postings demonstrating the
4   Muscle Test that appear on its website or other media outlets.
5
6   **III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY**
7   **APPROVAL**
8           As a matter of public policy, settlement is a strongly favored method for
9   resolving disputes. *See Util. Reform Project v. Bonneville Power Admin.,* 869 F.2d
10  437, 443 (9th Cir. 1989) ("...if there is room for doubt, we ought not to resolve it in
11  a manner that sends the parties back to litigation.").  This is especially true in
12  complex class actions such as this. *Officers for Justice v. Civil Serv. Comm'n,* 688
13  F.2d 615, 625 (9th Cir. 1982).
14          Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval
15  for the compromise of claims brought on a class basis.  At the final approval
16  hearing, the Court will have before it papers submitted in support of the proposed
17  settlement and will be asked to make a determination as to whether the settlement is
18  fair, reasonable, and adequate under all of the circumstances.  At this juncture,
19  however, the parties request only that the Court grant preliminary approval of the
20  settlement.
21          In determining whether preliminary approval is warranted, the sole issue
22  before the Court is whether the proposed settlement is within the range of what
23  might be found fair, reasonable, and adequate, so that notice of the proposed
24  settlement should be given to Class Members and a hearing scheduled to consider
25  final settlement approval. *See Manual for Complex Litigation, Fourth* §13.14 at 173
26  (Federal Judicial Center 2004) ("First, the [court] reviews the proposal preliminary
27  to determine whether it is sufficient to warrant public notice and a hearing.  If so, the
28  final decision on approval is made after the hearing.").

10

1    The parties now request the Court to take the first step in this process and
2  grant preliminary approval of the proposed settlement.  The proposed settlement
3  clearly satisfies the standard for approval.  The settlement requires that Power
4  Balance provide a complete and full refund for the entire retail price of any Power
5  Balance Products purchased.  This is above and beyond the amount Class members
6  would be entitled to if Power Balance was ordered, as restitution, to disgorge the
7  amount it was unjustly enriched.  The Settlement calls for an immediate initial
8  seeding of a settlement pool in the amount of five hundred thousand dollars
9  ($500,000.00) to provide for refunds to Class members.  Power Balance will
10  continue to make monetary contributions to the settlement fund to ensure the
11  amount does not dip, during the claims period, below two hundred and fifty
12  thousand dollars ($250,000.00).  Given the agreement by the Power Balance
13  Defendants to make the class members whole, there is no reason to proceed with
14  protracted litigation and unnecessarily face those risks associated with class action
15  matters.  Counsel believe this settlement represents a good resolution to this
16  Litigation and eliminates the risk that the Class might not otherwise recover or
17  recover a lesser amount if litigation were to continue.

18    Moreover, reference to factors considered by courts in granting final approval
19  of class action settlements lends support to the proposition that the settlement is well
20  within the range of possible approval.  The terms of the proposed settlement are the
21  product of arm's-length negotiations between the parties and achieved largely
22  during formal mediation under the guidance of noted mediator the Honorable John
23  K. Trotter (Ret.).  During these negotiations, Counsel zealously advanced Plaintiff's
24  position and were fully prepared to continue to litigate rather than accept a
25  settlement that was not in the best interest of the Class.  Similarly, Defendants,
26  through their counsel, zealously advanced its position that Plaintiff would have
27  insurmountable problems on class certification, liability and damages.  Defendants
28  likewise were fully prepared to continue to litigate rather than settle the Litigation

11

1  for an unreasonably high amount.

2          Plaintiff, through his counsel, having carefully considered and evaluated,

3  *inter alia*, the relevant legal authorities and evidence to support the claims asserted

4  against Defendants, the likelihood of prevailing on these claims, the risk, expense,

5  and duration of continued litigation and the likely appeals and subsequent

6  proceedings necessary if Plaintiff did prevail against Defendants at trial, have

7  concluded that the settlement is fair, reasonable and adequate and in the best interest

8  of the Class. *See* (Ravipudi Decl.)   Counsel[5] has significant experience in complex

9  class action litigation and have negotiated numerous other class action settlements

10  throughout the country.  It is well established that significant weight should be

11  attributed to the belief of experienced counsel that settlement is in the best interest

12  of the Class. *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1291 (9th Cir. 1992), citing

13  *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982).

14          Last, the short duration of the Class period, the formal injunction, and the fact

15  that Power Balance will cease the allegedly wrongful conduct make the terms of the

16  settlement fair, reasonable, and adequate.  Therefore, the parties believe that the

17  number of objectors to the Class settlement at the final approval hearing will be

18  minimal.

19

20

21

22

23

24

25 ───────────────

26 [5]  As fully set forth in the attached declaration of Rahul Ravipudi, Plaintiff's
counsel is experienced in complex and class action litigation, and has prosecuted
27 similar cases throughout the nation. *See* Ravipudi Decl., ¶ 7.

28

## IV.   THE PARTIES HAVE STIPULATED TO CERTIFICATION FOR PURPOSES OF SETTLEMENT AND CERTIFICATION IS APPROPRIATE

Prior to granting preliminary approval of a settlement, the Court should determine the proposed Settlement Class is a proper class for settlement purposes. *See Manual for Complex Litigation, Fourth*, §21.632; *Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court can certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the four prerequisites in Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Rule 23(b). F.R.C.P. 23; *In Re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 132-133 (2nd Cir. 2001).

### A.   The Requirement of Numerosity Is Satisfied

An estimated 1.7 million Power Balance Products were purchased by approximately 973,782 class member during the Class Period at issue in the Litigation. (See Declaration of Andrew Safir, table 2  p.8:12-18). Thus this combined number of consumers is so numerous that joinder of all settlement class members is impracticable. F.R.C.P. 23(a)(1).

### B.   The Requirement of Commonality Is Satisfied

The legal and factual issues in this case are common for all members of the class. Defendants' policies and marketing surrounding the sale of Power Balance Accessory products did not distinguish between or among consumers. Defendants' actions toward the class members were identical, so the issues of whether these actions support Plaintiffs' claim for damages is likewise identical. Included among these common issues are:

a.   Whether Defendants' made statements constituting untrue and/or misleading advertising in violation of California Business & Professions Code § 17500 et. seq.;

1      b.     Whether Defendants' conduct in misrepresenting the benefits of the

2 Power Balance Accessories constituted unfair business practices in violation of

3 California Business & Professions Code § 17200 et seq.;

4      c.     Whether Defendants' conduct in misrepresenting the benefits of the

5 Power Balance Accessories constituted fraudulent business practices in violation of

6 California Business & Professions Code § 17200 et seq.;

7      d.     Whether Defendants' represented that the Power Balance Accessories

8 have characteristics, uses, or benefits which they do not have;

9      e.     Whether Defendants' conduct, as alleged in this Complaint, caused

10 injury to the Plaintiff and/or other member of the Class; and

11      f.     The appropriate measure of damages sustained by the Plaintiff and/or

12 other members of the Class.

13

14    **C.**    **The Requirement of Typicality Is Satisfied**

15      Plaintiff's claims are typical of those of the settlement class because the

16 claims of all class members arise from Power Balance's sale of various Power

17 Balance Products.  See Declaration of Andre Batungbacal at ¶ 9.  Again, the conduct

18 of Power Balance toward Plaintiff and the Settlement Class is identical.

19

20    **D.**    **The Requirement of Adequate Representation Is Satisfied**

21      Plaintiff and class counsel have fairly and adequately represented and

22 protected the interests of all settlement class members.  Plaintiff has no interests

23 antagonistic to the settlement class members.  Class counsel have conducted a

24 thorough pre-filing and continuing investigation, vigorously prosecuted the actions,

25 and negotiated a settlement which provides prompt and valuable relief to settlement

26 class members.  Counsel for the class have significant experience in complex class

27 action litigation and have negotiated numerous other class action settlements

28 throughout the country.  *See* Declaration of Rahul Ravipudi and Filippo Marchino.

14

1

### E.    The Settlement Class Should be Certified Under Rule 23(b)(3)

2       Certification is appropriate because Plaintiff has satisfied the predominance

3  and superiority requirements under Rule 23(b)(3).  Under the Rule 23(b)(3)

4  predominance analysis, the Court must determine whether the proposed class is "

5  'sufficiently cohesive to warrant adjudication by representation.' " *Hanlon,* 150 F.3d

6  at 1022, citing *Amchem Prods.,* 521 U.S. at 623, 117 S.Ct. 2231.  This reasoning

7  was continued in the recent case *Wright v. Linkus Enterprises, Inc.* (E.D. Cal. 2009)

8  259 F.R.D. 468, 473.  The Court granted preliminary approval of the settlement

9  agreement stating that:

10          The requirement is satisfied if a plaintiff establishes that a
           "common nucleus of facts and potential legal remedies
11          dominates" the litigation. *Id.* The "common nucleus of
           facts" in the present case derives from the alleged policies
12          that required class members to work without
           compensation, meal and rest periods, and/or
13          reimbursement for expenses. Based on these alleged
           violations of federal and state law, class members would
14          be entitled to the same legal remedies. Accordingly, class
           certification for purposes of preliminary approval of the
15          Settlement Agreement is proper, despite the existence of
           minor factual differences between individual class
16          members, because the common issues predominate over
           varying factual predicates
17

18      *Wright v. Linkus Enterprises, Inc.* (E.D. Cal. 2009) 259
       F.R.D. 468, 473
19

20

21

22      The questions of law and fact common to all class members are set forth

23  above.  These common issues predominate over any individual issues such as the

24  nature and extent of damages. *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975)

25  ("The amount of damages is invariably an individual question and does not defeat

26  class action treatment.").  The damages issues in this case are easily manageable

27  because there is a simple and fair formula for obtaining proof of purchase of Power

28

1   Balance products, ascertaining the full retail price and refunding it to consumers.

2        Additionally, a class action is clearly superior to other available methods for

3   the fair and efficient adjudication of the controversy because joinder of all class

4   members who purchased Power Balance Products is impossible.

5        Moreover, as the damages suffered by individual members of the settlement

6   class may be relatively small, the expenses and burden of individual litigation would

7   make it impossible for all settlement class members to individually redress the harm

8   allegedly done to them.  Finally, centralizing the litigation of claims in this court is

9   desirable.

10       In sum, the Settlement Class is suitable for certification, and the Court should

11  certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting

12  preliminary approval to the settlement.

13

14  **V.      THE PROPOSED NOTICE IS REASONABLY CALCULATED TO**

15         **REACH MEMBERS OF THE CLASS**

16       Before approving a settlement, "the court must direct to class members the

17  best notice that is practicable under the circumstances, including individual notice to

18  all members who can be identified through reasonable effort."  Fed.R.Civ.P.

19  23(c)(2)(B).

20       The [Proposed] Preliminary Approval Order requires Power Balance to send a

21  Notice of Proposed Class Action Settlement and Hearing Date for Court Approval

22  ("Notice") to all members of the Class.  The Notice fairly apprises Class Members

23  of their rights with respect to the settlement and, therefore, is the best notice

24  practicable under the circumstances and should be approved by the Court.  *See*

25  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993).

26       The Notice identifies the parties, and describes the lawsuit and the settlement

27  Class in a straightforward manner.  The Notice also succinctly describes the

28  essential terms of the settlement, advises the settlement Class members as to what

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  must be done to participate in the settlement, and identifies all parties whose claims

2  are being released.

3        The Notice also includes a statement of the steps individual settlement Class

4  members can take to object to the settlement or opt-out of the Class and provides all

5  applicable deadlines for such action.  The Notice informs Class members that they

6  may appear at the final approval hearing through counsel, should they choose to do

7  so.  The Notice further informs Class members that if they do not exclude

8  themselves from the Class, and the settlement is approved, they will be bound by the

9  resulting judgment.  Class members are referred to contact the parties' counsel to

10 obtain more detailed information.

11       The Notice also contains information regarding counsel's fee and expense

12 application and the proposed plan for allocating the settlement proceeds among

13 Class Members.  Thus, the Notice will provide the necessary information for Class

14 members to make an informed decision regarding the proposed settlement.

15       With respect to the proposed method of giving notice, it is appropriate

16 because it is "reasonably calculated to reach the members of the class." *Mendoza v.*

17 *United States*, 623 F.2d 1338, 1351 (9th Cir. 1980).  Pursuant to the terms of the

18 settlement, the proposed Notice Plan shall consist of 1) A Summary Notice of this

19 Settlement that will be e-mailed directly to each of Power Balance's customers who

20 fall within the Class and for whom Power Balance has an email address; 2) the

21 Summary Notice of this Settlement will be mailed in a post card to all Class

22 Members whose addresses can be located from Power Balance's records and will

23 also be sent by Power Balance in a direct message to each of its Facebook friends 3)

24 a Facebook Notice, comprised of a prominently displayed reference to the

25 Settlement, will be published on the Power Balance home page of Facebook, located

26 at located at www.facebook.com\powerbalance with a link to the Settlement

27 Website; 4) A Summary Published Notice will also be published on a nationwide

28 basis, in the first issue of each of the following publications that is available after the

17

1  Preliminary Approval Order is signed: *Parade Magazine, Sports Illustrated, People*

2  (for two consecutive issues), *Newsweek* (for two consecutive issues), *and National*

3  *Geographic*; 5) A Long Form Notice consisting of the complete form of Notice and

4  Claim Form, available to Class Members attached as exhibit "D" to the Settlement

5  Agreement, will be Published on Power Balance's website located at

6  www.powerbalance.com; and 6) the Published Notice and Long Form Notice will

7  also be available on a settlement website (created for purposes of settlement) located

8  at www.pbsettlement.com.

9       In addition a telephone number for class members to obtain information and

10  contact the Claims Administrator will be established and maintained until the end of

11  the claims period.  Considering the nature of Power Balance's business and that

12  sales were made nationwide, these multiple methods of notice will be most likely to

13  reach a high percentage of Class members.  By providing notice in this manner, the

14  Claims Administrator estimates that more than 70% of the Class members will be

15  reached.

16       For these reasons, the parties request the Court approve the proposed Notice

17  attached as "Exhibits C, D, and E to the Settlement Agreement" and approve the

18  dissemination of these Notices by the methods described above.

19

20  **VI.    PROPOSED SCHEDULE OF EVENTS**

21       In connection with preliminary approval of the settlement, the parties request

22  that the Court establish dates by which notice of the settlement will be provided to

23  Class members and dates by which Class members may exclude themselves from

24  the Class or object to the settlement.  The following schedule is proposed and may

25  be inserted by the Court into the accompanying [Proposed] Order Preliminarily

26  Approving Settlement and Approving the Form and Manner of Notice:

27

28

| Event | Date |
|---|---|
| Time period to establish Settlement Website and Dedicated Claimant Telephone Number: | Within 30 days after the entry of an Order granting preliminary approval of the Settlement Agreement. |
| Last day to provide Notice by Mail, Email, Facebook, and Nationwide Publication: | 75 days after the entry of an Order granting preliminary approval of the Settlement Agreement |
| Last day for Class members to object to or opt-out of the settlement: | 75 days after the date the first published notice is available to class members |
| Final Approval Hearing: | Within 135 days after the entry of an Order granting preliminary approval of the Settlement Agreement |

## VII.   CONCLUSION

For all of these reasons, the settlement before the Court falls within the range of possible approval, and therefore, merits preliminary approval. The parties submit that this proposed settlement is fair, reasonable, and in the best interests of the Class. The parties therefore respectfully requests this Court to (1) grant preliminary approval of the proposed settlement; (2) certify the class for the purposes of settlement; (3) approve the proposed form and method of giving notice to the Class

19

1  of the pendency of this action and the settlement; (4) schedule dissemination of the

2  notice; and (5) schedule a hearing on final approval of the  settlement and plaintiffs'

3  counsel' application for an award of attorneys' fees and reimbursement of expenses

4  at which time Class members may be heard.

5

6  DATED: September 22, 2011          PANISH SHEA & BOYLE LLP

7

8

9                                    By: _____

10                                        Rahul Ravipudi
                                          Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT